John O. Ferrill (Ferrill), was terminated by his employer, Hydro-Parts, Incorporated (Hydro-Parts), on August 16, 1991. Ferrill completed an initial claim for benefits form on September 18, 1991. On October 11, 1991, the Mississippi Employment Security Commission (MESC), mailed a letter informing Ferrill that he was disqualified from receiving unemployment benefits. The reason given was that he "voluntarily left" his job due to working conditions and that those conditions had not been shown to be detrimental to his health, safety, or morals.
Ferrill appealed this decision, and a hearing was held on October 31, 1991, before Appeals Referee J.E. Webb. Webb rendered a decision affirming the disqualification on November 14, 1991. Ferrill's appeal to the agency's Board of Review was likewise unsuccessful as that tribunal affirmed the Referee and specifically adopted his findings of fact and opinion.
After exhausting his administrative remedies, Ferrill duly perfected his appeal to the Circuit Court of Hinds County, where the decision of the Commission was affirmed. Ferrill then appealed to this Court assigning the following as error:
 I. THE APPEALS REFEREE MISALLOCATED THE BURDEN OF PROOF BY REQUIRING FERRILL TO PROVE GOOD CAUSE FOR VOLUNTARILY LEAVING HIS EMPLOYMENT. *Page 934 
 II. THE APPEALS REFEREE FINDINGS OF FACT WERE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.
 III. THE APPEALS REFEREE MISAPPLIED THE LAW TO THE FACTS SUPPORTED BY THE EVIDENCE INTRODUCED BY FERRILL.
We hold that the Commission erroneously allocated the burden of proof in the proceeding below and accordingly, reverse and remand for reconsideration in light of the appropriate standard.
 STATEMENT OF THE FACTS
On February 12, 1990, Ferrill began work as a janitor at Hydro-Parts' manufacturing plant in Puckett, Mississippi. He claims that shortly after beginning his shift at 3:45 a.m. on August 7, 1991, two fellow employees attempted to rob him, and he fled the worksite in fear. The company subsequently terminated Ferrill, employed a janitorial service, and later found another full-time janitor.
At the hearing below, Ferrill related an earlier incident involving a fellow employee who made threatening remarks in his presence in support of his claim that he involuntarily left his job because he feared for his safety. The details of the first incident involving an employee known as "Eric" are not entirely clear. Apparently, in carrying out his janitorial duties, Ferrill removed some spoiled food belonging to Eric from the employees' refrigerator. According to Ferrill, Eric responded by stating in Ferrill's presence, "that if that son-of-a-bitch does anything about me, throws anything out of the refrigerator that belongs to me, I'm gone [sic] choke him to death."
According to Ferrill, he reported the threat to his supervisor, Richard Baker, and a meeting ensued. At the meeting, Eric admitted to Baker and another member of management, Bill Wallzinsky, that he made the threat. According to Ferrill, however, Eric was not disciplined. The only action taken by Hydro-Parts was to post a note on the refrigerator to the effect that food left over three days would be removed on Baker's authority. Ferrill also testified that management instructed him at that time, "not to turn no dark corners and not to, that they'd gang up on me, and not give them no chance to get, not to work if they was behind me, if this guy was behind me."
Ferrill's recollection was that this incident took place "about three months prior to the lay off." Steve Thornton, a personnel manager at Hydro-Parts, testified that the lay off took place in October of 1990. According to Ferrill, Eric was laid off and never returned.
Ferrill had no further problems with Eric or any other employee until Wednesday, August 7, 1991. On that morning, while cleaning the offices in the front of the building, he was approached by two workers from the production line who asked him for change. When he asked to see their money:
 one of them run around behind me and tried to get his hand in my pocket and I just knocked his hand out of the way and the other one was in front of this old buggy that I push and I shoved him up against the wall and I run out the door.
After fleeing the robbers, Ferrill continued out the back door, pausing only to toss his keys into the security guard's office at the rear of the building. Sometime after this incident, Ferrill contacted MESC to determine whether he could receive unemployment benefits. He was told that he needed a police report describing the incident to support his claim.
At some point during the week following his last day on the job, Ferrill met with Frank Ward, the "main man" at Hydro-Parts. Arvol Burkes, the Puckett town marshal, was present at Ferrill's request. Ferrill testified that at that meeting, he asked for his job back and for tighter security to ensure his safety. He further stated that Ward responded by saying, "We'll see what we can do in the next two or three days." When Ferrill checked with his supervisor, Baker, a few days later, he was informed that he no longer had a job with Hydro-Parts.
Upon being called as a witness by Ferrill, Marshall Burkes testified that he was not aware of any instances of possible crimes involving Hydro-Parts employees other than the one related to him by Ferrill. He further stated that no "papers" were ever filed *Page 935 
with respect to the attempted robbery of Ferrill. Burkes' recollection of the meeting with Ward was that Ferrill told his employer that he left without reporting the incident because he had a large amount of cash on him and he was frightened. Burkes stated that he did not pay particular attention to the conversation between Ferrill and Ward.
The final witness at the hearing below was Steve Thornton, a human resources manager at Hydro-Parts. Thornton gave a different account of the events surrounding Ferrill's departure:
 My understanding is he, on August, 7th, that morning, he got angry because the cafeteria was a mess, because the coffee, people brought coffee pots into the cafeteria and he got mad. He wasn't gone [sic] clean it up and he threw a Coke can across, and just, and stormed out.
Thornton did not witness the events he described nor was he able to state the name of anyone who did. He also testified that Ferrill's request to return to work was denied because of company policy not to rehire persons who leave with no notice or apparent reason. Thornton also presented Ferrill's personnel folder to the Appeals Referee. The file contained no record of the earlier incident involving threats by "Eric." Thornton stated that although his job involved handling matters of this type, he was not aware of any such incident. He began work on June 25, 1990, the approximate time of the first incident.
Following the hearing, the Referee ruled in favor of Hydro-Parts due to Ferrill's failure to show good cause for leaving his job. The Commission's Board of Review affirmed, accepting and adopting the Referee's findings of fact and opinion. The decision of the Board was affirmed without discussion by the lower court.
 DISCUSSION I. THE APPEALS REFEREE MISALLOCATED THE BURDEN OF PROOF BY REQUIRING MR. FERRILL TO PROVE GOOD CAUSE FOR VOLUNTARILY LEAVING HIS EMPLOYMENT.
The dispositive issue at the hearing below was whether Ferrill was disqualified for leaving his job voluntarily "without good cause." The Appeals Referee placed the burden of showing good cause on Ferrill:
 The Referee is further of the opinion that claimant has not shown good cause for leaving the employment so as to be entitled to unemployment compensation benefits free from disqualification from a fund set aside to pay benefits to individuals who are unemployed through no fault of their own.
Ferrill contends that this was error in light of this Court's ruling in Mississippi Emp. Sec. Comm'n v. Gaines,580 So.2d 1230 (Miss. 1991). Hydro-Parts, on the other hand, asserts that Ferrill is relying on dicta from Gaines, and that the burden of showing good cause is properly on the claimant.
A closer examination of Gaines shows that Annell Gaines left her job with the Postal Service because her retirement benefits amounted to more than her regular pay. The Commission ruled that she was disqualified for failure to show good cause for quitting her job. The Circuit Court reversed, holding that a significant reduction in hours had forced Gaines to leave. On appeal, this Court reinstated the decision of the Board of Review, discussing both the burden of proof in a voluntary quit case and the proper remedy for misallocation of that burden:
 In its decision the Board of Review states that "she [referring to Ms. Gaines] has not proven good cause" allocating the burden of proof to the claimant. Our statutory scheme and the prior decisions of this Court dictate otherwise. Under Miss. Code Ann. § 71-5-511 (1972), an individual need only show that she has been paid wages during a base period for insured work, she is unemployed and registered for work and that she "is able to work and is available for work" in order to be eligible for unemployment benefits. Section 71-5-513 provides for certain disqualifications for persons otherwise eligible, including the disqualification for leaving work "voluntarily without good cause." In this jurisdiction, the burden of proof is on the *Page 936 
employer to show by substantial, clear and convincing, evidence that the claimant is disqualified. Shannon Eng. Const. v. Employment Sec. Comm'n, 549 So.2d 446 (Miss. 1989).
 Ordinarily a judgment based on a misallocation of the burden of proof would be reversed for reconsideration on application of the pertinent standard. In the instant case, however, there is no significant factual dispute and remand is therefore unnecessary. The clear facts dictate the only result that the MESC could justly reach.
Gaines, 580 So.2d at 1233.
Because Gaines freely admitted her motivation for leaving, there was no material factual issue in dispute. The only question was whether the undisputed motive rose to the level of good cause. Thus, the Court was able to render a decision in favor of the employer, despite the error of misallocation.
In the present case. Ferrill's reason for leaving was very much in dispute, and the Referee based his ruling solely on Ferrill's failure to prove "good cause." Thus, Gaines requires reversal, and remand is necessary for reconsideration in light of the applicable standard. The arguments of Hydro-Parts to the contrary notwithstanding, we are bound by our unequivocal holding inGaines.[1] Our decision to reverse on this issue renders Ferrill's remaining assignments moot.
REVERSED AND REMANDED TO THE MISSISSIPPI EMPLOYMENT SECURITYCOMMISSION FOR REHEARING OR OTHER DISPOSITION NOT INCONSISTENTWITH THIS OPINION.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
[1] The Court is aware that the Legislature has enacted House Bill 683 which specifically places the burden of proof on the employee in involuntary quit cases. This statute, if applicable, would require a different result in the case sub judice.
Nevertheless, our decision in Gaines defined the law at the time of the hearing in this case and is controlling for this appeal. *Page 1325