IRVING, P.J.,
dissenting:
¶ 15. The majority finds that MDES’s decision to deny Pilate unemployment benefits based on “misconduct” was supported by substantial evidence. Based on my review of the record, TA failed to meet its burden of proving misconduct by “substantial, clear and convincing evidence.” While TA’s general manager attempted to explain the conflicting reasons given for Pilate’s termination, his testimony was, at best, self-serving and arguably pretextual, as it would enable TA to avoid an unemployment-compensation claim. I cannot accept that under such circumstances, TA proved by clear and convincing evidence that it terminated Pilate for misconduct. Therefore, I dissent. I would reverse and render the decision of MDES and the order of the circuit court affirming that decision and remand this case to MDES for a determination of and an award of unemployment-compensation benefits.
¶ 16. At the September 21, 2009 hearing before the ALJ, Pilate testified that he scraped-but did not jump-a curb in the company vehicle. Pilate further testified that his termination was related to decreased business and TA’s efforts to reduce its payroll expense. In support of his claim, Pilate pointed to the Employment Verification Form completed by TA, which lists the reason for termination as “due to economic downfall and sales had to do staff reduction.”
¶ 17. TA’s general manager, Avery, admitted that there had been reductions in hourly workers at the time that Pilate was terminated. However, Avery explained that Pilate worked on commission and no commissioned employees were released. Additionally, Avery pointed to TA’s Personnel Action Form, which listed the reason for Pilate’s termination as “failure to maintain company equipment” and described the incident with the company vehicle where Pilate allegedly jumped a curb.
¶ 18. When questioned regarding the conflicting reasons for termination listed on the Employment Verification Form and the Personnel Action Form, Avery initially testified that the Employment Verification Forms are completed by a “third[-]party company.” However, the form contained in the record is signed as being completed by Qwanda Anderson, TA’s on-site bookkeeper. Later on, Avery testified that Anderson was the “back-up bookkeeper” and was still in training at the time that the form was completed. He further explained that generally the Personnel Action Form is given to the bookkeeper, who then uses it to complete the Employment Verification Form.
¶ 19. On September 23, 2009, the ALJ rendered her decision affirming the denial of benefits. Pilate appealed to the MDES Board of Review, which remanded the case to the ALJ and requested that additional testimony be taken. Specifically, the Board requested testimony from Van Sheppard, a TA employee who allegedly *835 witnessed Pilate jump a curb in the company vehicle.
¶ 20. On November 23, 2009, the ALJ held a second hearing. Sheppard testified that he had witnessed someone drive a company truck over a curb to avoid the parking gate. Sheppard then notified Avery that he had witnessed someone driving in an unsafe manner. Sheppard admitted that he did not recognize the driver. Avery explained that when Sheppard reported the incident, Avery pulled work orders to determine which mechanic was driving. According to Avery, at the time that the incident occurred, Pilate was the only mechanic out on a work order in a company vehicle. When asked whether Pilate admitted to jumping a curb to avoid the parking gate, Avery testified that he could not recall.
¶21. The employer carries the burden of proving misconduct by “substantial, clear and convincing evidence.” Miss. Employment Sec. Comm’n v. Johnson, 9 So.3d 1170, 1173 (¶ 8) (Miss.Ct.App.2009) (quoting Ferrill v. Miss. Employment Sec. Comm’n, 642 So.2d 933, 936 (Miss.1994)). In my judgment, TA failed to meet its burden. Specifically, TA did not provide an adequate explanation for the conflicting reasons for Pilate’s termination. The Personnel Action Form lists the basis for termination as “failure to maintain company equipment”; however, the Employment Verification Form lists the reason for termination as “due to economic downfall and sales had to do staff reduction.”
¶22. When asked to explain the discrepancy, Avery initially testified that the Employment Verification Form is sent to a third party for completion; however, he later testified that the on-site bookkeeper, who was new to her job, had erroneously prepared the form. While Avery contended that Pilate was not terminated to reduce payroll expenses, he admitted “getting on to” Pilate for his overtime hours and reducing hourly staff at the same time that Pilate was terminated. Given these facts, I am not persuaded that TA’s decision to terminate Pilate for “misconduct” was not pretextual. Other jurisdictions have recognized that because “an employer’s contribution to the unemployment[-]compensation fund is affected by the claims experience of its employees,” an employer has an incentive to “characterize a termination as based on misconduct” to avoid a claim. Morris v. U.S. Envtl. Prot. Agency, 975 A.2d 176, 182 n. 5 (D.C.2009).
¶ 23. Furthermore, “the question of whether an employee committed misconduct must be resolved with reference to the [unemployment-compensation statute’s] purpose, which is to protect employees against economic dependency caused by temporary unemployment.” Id. at 181 (quoting Chase v. D.C. Dep’t of Employment Servs., 804 A.2d 1119, 1123 (D.C.2004)). Additionally, given the remedial nature of the unemployment-compensation statute, “its provisions must be liberally and broadly construed.” Id. (citation omitted). See also Nevettie v. Wal-Mart Assoc., Inc., 331 S.W.3d 723, 727 (Mo.Ct.App.2011) (explaining that the term “ ‘misconduct’ should not be so literally construed as to effect a forfeiture of benefits by an employee except in clear instances”).
¶ 24. Given the beneficent purpose of the unemployment-compensation statute, doubtful cases, such as Pilate’s, should be resolved in favor of the employee seeking benefits. Therefore, I believe that the MDES erred in denying Pilate unemployment benefits.
¶ 25. For the above reasons, I dissent.
RUSSELL, J., JOINS THIS SEPARATE WRITTEN OPINION.