**Evelyn Poole KOBER, Petitioner,**

v.

**DISTRICT UNEMPLOYMENT COMPENSATION BOARD, Respondent.**

**No. 12255.**

District of Columbia Court of Appeals.

Submitted Nov. 22, 1977.

Decided March 17, 1978.

Evelyn Poole Kober, pro se.

Russell L. Carter, Bill L. Smith, Robert J. Hallock, Washington, D. C. and Earl S. Vass, Jr., Richmond, Va., were on brief, for respondent.

Before NEBEKER and YEAGLEY, Associate Judges, and PAIR, Associate Judge, Retired.

NEBEKER, Associate Judge:

Petitioner was denied unemployment compensation benefits for a two-week period commencing March 20, 1977, upon respondent's (the Board's) conclusion that she was not "available for work" during that period. D.C.Code 1973, § 46–309(d). Petitioner asserts that the Board's conclusion is not supported by the record, and we agree.

The record reveals[1] that petitioner was last employed in the office of a United States Senator. When that employment was terminated due to office reorganiza-

---

1. Only petitioner appeared at the hearing before the appeals examiner; her last employer did not contest her eligibility at any stage of these proceedings.

tion, petitioner commenced an active search for new employment. Approximately four and one-half months later, however, petitioner left the District for eleven days to attend to her hospitalized sister in North Carolina. During those eleven days, she made no "in-person" work-search contact, nor did she make telephone calls or write letters in search of employment. Rather, she relied upon her pending applications for employment before numerous federal agencies and offices and the fact that her husband (a medical student) remained in the District to receive mail and telephone calls upon which petitioner might have been required to act. Additionally, she made three attempts to contact prospective employers by telephone during the reporting period for which she was found ineligible for benefits (but before leaving the District). She asserted—and here argues—that these circumstances were sufficient to show availability for work or, alternatively, to constitute "good cause" for not being available for work.[2]

The claims examiner found only that petitioner "was scheduled to report concerning her benefit claim on 3/22/[77], but failed to do so because she was out of town" and that "[w]hile away from the area, [she] was unable to search for full-time employment." He concluded that

> [t]he fact that [her] employment applications were considered by prospective employers during the period in issue is insufficient to comply with the work search requirement. The claimant [has failed to evidence] an active search for full-time work [or] exhibit an attachment to the labor market.

The Board affirmed the appeals examiner's findings and conclusions and added the following as its rationale for denying benefits:

> The term actually seeking work means that an individual be exercising and put-

ting forth such effort to obtain employment as the circumstances of the situation would justly demand of a person with a sincere desire to secure employment.

> In considering whether a person is available for work, probably the most important fact to be ascertained is the claimant's state of mind. If a person really wants to work, really prefers working for wages to living on benefits and so conducts herself so that her acts show such an intention actually exists, then it can be said that the person is available for work. It is undisputed that in this case the claimant was out of the area for the principal part of the reporting period and unable to search for full time employment.

The findings of the Board are binding upon this court if supported by substantial evidence in the record. D.C. Code 1973, § 46–311(f); *id.* § 1–1510. It is undisputed that petitioner was away from the District during eleven of the fourteen days of the reporting period and that she made no new effort during these eleven days to secure employment. There is no support in the record, however, for the appeals examiner's finding, affirmed by the Board, that petitioner did not report as scheduled on March 22, the day she left for North Carolina. The only evidence on this point was petitioner's testimony before the appeals examiner:

> Well, I came down here [the unemployment compensation offices] early and I got permission to sign that morning, but I was required to stand in the line. I was not allowed to go to the front of the line or whatever. I was required to stand in line which resulted in my missing my reserved flight [to North Carolina]. So I decided then to drive because I would be there almost as quickly. . . .[3]

---

**2.** D.C.Code 1973, § 46–309(d) provides in part that "failure to comply with this condition [availability for work] may be excused by the Board upon a showing of good cause for such failure . . . ."

**3.** The record also reveals that the claims deputy who made the initial determination of ineligibility in this case used a form report which contained a block labeled "Failure to report as directed" as a reason for ineligibility. This was

■ Nor is the implication by the Board, whether a finding or a conclusion, that petitioner did not have the requisite "state of mind" to be available for work supported either in the record or in the law. There is no direct evidence of petitioner's preference for "living on benefits," nor any evidence from which the Board could have drawn that inference. If such a preference is subjective, then it is irrelevant; by no law or logic may the Board grant benefits to a claimant who has a "sincere desire to obtain employment" but does nothing about it, and neither may it deny benefits to one who sincerely prefers not to work but makes every effort to find employment despite his disinclination. If, on the other hand, this preference is one to be found only by viewing the claimant's search for new employment and other such objective indicia, then it is synonymous with the definition of "available for work": "genuinely attached to the labor market and . . . making adequate contacts for work as the facts, exigencies, and circumstances in each individual case so warrant." *Woodward & Lothrop, Inc. v. District Unemployment Compensation Board*, 129 U.S.App.D.C. 155, 157, 392 F.2d 479, 481 (1968).

■ Review of administrative decisions requires that the facts flow rationally from the evidence and the conclusions rationally from the facts. D.C.Code 1973, §§ 1–1509(e), –1510; *A.L.W., Inc. v. Board of Zoning Adjustment*, D.C.App., 338 A.2d 428, 430 (1975). Where, as here, a potentially crucial finding is without support in the evidence and where, as here, the "most important" connection between fact and conclusion, the claimant's state of mind, is either irrelevant or superfluous, the Board's ultimate conclusion—that petitioner was not available for work—cannot be sustained. *A.L.W., Inc. v. Board of Zoning Adjustment, supra; Dietrich v. Board of Zoning Adjustment*, D.C.App., 293 A.2d 470, 473 (1972), *aff'd after remand*, 320 A.2d 282 (1974); *Citizens Association of Georgetown,*

*Inc. v. Alcoholic Beverage Control Board*, D.C.App., 288 A.2d 666 (1972).

The remaining findings of the Board—*i. e.*, that petitioner was away from the area for eleven days and made no new work-search contacts during that time—do not, moreover, reveal a consideration of all the "facts, exigencies, and circumstances [of the] individual case . . . ." *Woodward & Lothrop, Inc. v. District Unemployment Compensation Board, supra* at 157, 392 F.2d at 481. In both cases cited by the Board on appeal, this court sustained conclusions that the claimants were not available for work where it appeared that the individual circumstances of the claimants were considered. Thus, in *Doherty v. District Unemployment Compensation Board*, D.C. App., 283 A.2d 206 (1971), we sustained the Board's conclusion that the claimant was ineligible for benefits for a three-month period where, during that period, he was attending university courses in a small town far from the "metropolitan center . . . where job openings [in his field] are recurrent . . . ," and where his only work search was "sporadic" letter-writing in response to classified advertisements, to which he received only one response, a letter of rejection. *Id.* at 207–08. And in *Hollingsworth v. District Unemployment Compensation Board*, D.C.App., 375 A.2d 515 (1977), we sustained the Board's conclusion that the claimant was ineligible for benefits where her last employment had been as a telephone switchboard operator, where she limited her working hours to the daytime shift, where she made only one in-person and several telephone work-search contacts, and where she never requested the reemployment with her last employer to which she was entitled. *Id.* at 516–17.

In the instant case, unlike *Doherty* and *Hollingsworth*, the record does not reveal that the Board gave any consideration to the type of employment for which petition-

---

not checked. Absence of an entry on a business record is often probative of the negative inference to be drawn therefrom. *See, e. g., Sabatino v. Curtiss National Bank*, 415 F.2d

632 (5th Cir. 1969) (absence of entry in checkbook as probative that check had not been written).

er was suited[4] in its evaluation of the adequacy of her work-search efforts. In *Hollingsworth*, the Board not unreasonably considered the paucity of in-person contacts where the claimant sought employment as a telephone switchboard operator; but such contacts might well be wholly inappropriate where the claimant's employment prospects are initially dependent upon resume evaluation, with personal contact appropriate only at a much later stage of the selection process. And without consideration of petitioner's field of employment, the Board could not, as in *Doherty*, take into consideration the frequency with which job openings occurred in that field. The record in this case does not reveal the circumstances upon which the Board concluded that petitioner's work-search program was inadequate.

If, upon remand, the Board should again conclude, upon adequate findings, that petitioner was not, during the period in question, available for work, it must address the issue raised by petitioner throughout these proceedings: whether her circumstances constituted "good cause" for her failure to be available for work. *See Hill v. District Unemployment Compensation Board*, D.C. App., 302 A.2d 226, 228–29 (1973). We express no view as to which, if any, of her circumstances might constitute "good cause." Neither the statute nor Board regulation addresses this question,[5] and we believe that a reasoned approach to this issue by the Board, to whose expertise administration of the statute is entrusted, should precede judicial review of particular circumstances.

*Reversed and remanded.*

---

**4.** The record reveals that petitioner's occupation classification was designated "165.048" by the Board. We must assume, therefore, that the Board was aware of petitioner's occupation.

**5.** *See* D.C.Code 1973, § 46–309(d). Although the Board has addressed the meaning of "good cause" under D.C.Code 1973, § 46–310 (disqualification),*see* 18 D.C.R.R. §§ 301.1(a), 301.-3, 301.5, it has not done so with respect to initial eligibility.