Connie K. **MORRIS**, Petitioner,

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,** Respondent.

No. 07–AA–654.

District of Columbia Court of Appeals.

Argued March 20, 2009.

Decided July 9, 2009.

Theodore S. Allison, Washington, DC, for petitioner.

Brian T. Kehoe, Special Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time, R. Craig Lawrence, Assistant United States Attorney, and Cindy S. Owens, Special Assistant United States Attorney, were on the brief, for respondent.

Before WASHINGTON, Chief Judge, FISHER, Associate Judge, and STEADMAN, Senior Judge.

FISHER, Associate Judge:

Connie K. Morris asks us to review the decision of the Office of Administrative Hearings ("OAH") finding her ineligible to receive unemployment compensation benefits because she was fired for gross misconduct. Concluding that the Administrative Law Judge ("ALJ") failed to make findings on each materially contested issue of fact, we remand for further proceedings.

## I. The Factual and Procedural Background

Petitioner Connie K. Morris worked for the Environmental Protection Agency ("EPA") as an Information Liaison Specialist from January 12, 2003, until she was terminated on March 10, 2007. Ms. Morris alleges that she suffers from a "severe allergy to mold, mildew and dust mites" that causes her to experience "body swelling, breathing difficulties, bronchitis, rashes, rapid heart rate, rise in blood pressure," and other allergic reactions.

In April 2005 Ms. Morris sought an accommodation permitting her to work from home full-time, claiming that conditions in the EPA building triggered her severe allergic reactions. Although she previously had been allowed to work from home on occasion, her formal request for a telework arrangement was denied. When Ms. Morris sought reconsideration, the EPA determined she was a person with a disability and transferred her to a "clean space" facility. She experienced an allergic reaction in her new location, however, and missed many days of work during her recovery. Similar difficulties occurred at other locations to which she was transferred as a result of her continued complaints, despite the fact that the air quality in each of her work environments was extensively tested by the United States Public Health Service and found to be "acceptable by all applicable standards" and "better than ambient air."

On August 24, 2006, after she had used up all of her leave, her supervisor, John Richards, issued a memorandum informing Ms. Morris that her failure to provide appropriate medical documentation of her illness, and her continuing failure to report to work, "may lead to being placed in absence without leave (AWOL) status and/or disciplinary action, up to and including removal from Federal service." Although Ms. Morris provided several letters from her doctors, Mr. Richards found these documents insufficient because they did not specify what allergens were triggering Ms. Morris's reactions, or establish that her problems were caused by her work environment. Ms. Morris continued to miss work, and Mr. Richards charged

her with being absent without leave for 412 hours during the period from August 21, 2006, through December 18, 2006.

On December 18, 2006, Mr. Richards sent Ms. Morris an Order to Report for Normal Tour of Duty, warning her that if she did not return to work beginning on January 2, 2007, she risked other "disciplinary measures, including, and up to removal." On January 3,[1] Ms. Morris reported to work, but after two hours stated that she was sick and needed to leave. From January 4, 2007, until February 2, 2007, Ms. Morris called Mr. Richards each morning to inform him that she was unable to come to work; each day, Mr. Richards recorded her status as AWOL and insubordinate and reminded her that she was placing her job in serious jeopardy.[2]

On February 5, 2007, Mr. Richards issued a Notice of Proposed Removal based on two charges: (1) being AWOL for 468 hours between August 20, 2006, and December 29, 2006; and (2) insubordination and failure to follow supervisory instructions between January 3, 2007, and February 2, 2007. Ms. Marylouise Uhlig, the Associate Assistant Administrator, found that both charges against Ms. Morris had been "proved by the great weight of the evidence," and she removed Ms. Morris from federal service effective March 10, 2007.

The Administrative Law Judge ("ALJ") found that "Claimant suffered from a severe allergy to mold, mildew and dust mites[,]" but that "there [was] no evidence in the record to establish that in her several EPA work locations Claimant was exposed to specifically-identified allergens which caused Claimant's severe allergic reactions." His decision to deny unemployment benefits rested primarily on the undisputed fact that "Claimant failed to come to work at any time during the period January 4, 2007, through February 2, 2007." Faced with certain options, Ms. Morris "made an intentional decision to . . . refuse to return to work in violation of Employer's direct order. . . ." Furthermore, he concluded, "Claimant has failed to prove mitigating circumstances relating to her failure to report for work during [this time]." Based on these findings, the ALJ held that "Claimant's refusal to report for work during the period January 4, 2007, through February 2, 2007, after being expressly ordered to do so, constituted gross misconduct in the form of repeated absences after warning and insubordination."

## II. Standard of Review

▇▇▇ "This court must affirm an OAH decision when (1) OAH made findings of fact on each materially contested issue of fact, (2) substantial evidence supports each finding, and (3) OAH's conclusions flow rationally from its findings of fact." *Rodriguez v. Filene's Basement, Inc.*, 905 A.2d 177, 180 (D.C.2006). "Factual findings supported by substantial evidence on the record as a whole are binding on the reviewing court, although this court may have reached a different result based on an independent review of the record." *McKinley v. District of Columbia Dep't of Employment Servs.*, 696 A.2d 1377, 1383 (D.C.1997) (citation omitted). In conducting our review, we are bound by the rule that "[a]n administrative order can only be sustained on the grounds relied on by the agency." *Georgetown University Hospital v. District of Columbia Dep't of Employment Servs.*, 916 A.2d 149, 152 (D.C.2007)

---

**1.** January 2 became a federal holiday in the District of Columbia due to the funeral of President Gerald Ford.

**2.** The record contains a gap in documentation from January 17 through January 21.

(citation omitted).[3] "If the agency fails to make a finding on a material, contested issue of fact, this court cannot fill the gap by making its own determination from the record, but must remand the case for findings on that issue." *Brown v. Corrections Corp. of America*, 942 A.2d 1122, 1125 (D.C.2008) (citing *Colton v. District of Columbia Dep't of Employment Servs.*, 484 A.2d 550, 552 (D.C.1984)).

## III. Analysis

### A. Statutes and Regulations

A terminated employee who satisfies the basic requirements of the unemployment compensation statutes is presumed to be eligible for benefits. D.C.Code § 51–109 (2001). That presumption is rebutted, and the employee becomes ineligible for benefits, when the employer proves by a preponderance of the evidence that the employee was fired for misconduct. D.C.Code § 51–110 (2001). The District of Columbia distinguishes between "gross misconduct" and "misconduct, other than gross misconduct," which we have referred to as "simple misconduct." D.C.Code § 51–110(b)(1) and (2) (2001); *see Chase v. District of Columbia Dep't of Employment Servs.*, 804 A.2d 1119, 1121–22 (D.C.2002). Being discharged for gross misconduct has a different impact on unemployment benefits than being discharged for simple misconduct. *See* D.C.Code § 51–110(b) (2001).[4]

"[T]he question whether the employee committed misconduct must be resolved with reference to the statutory purpose, which is to protect employees against economic dependency caused by temporary unemployment." *Chase*, 804 A.2d at 1123 (quoting *Butler v. District of Columbia Dep't of Employment Servs.*, 598 A.2d 733, 735 (D.C.1991)); *accord, The Washington Times v. District of Columbia Dep't of Employment Servs.*, 724 A.2d 1212, 1216–17 (D.C.1999) ("The statute is remedial humanitarian legislation of vast import, and its provisions must be liberally and broadly construed.") (internal citations and quotation marks omitted). An employer seeking to prevent the payment of unemployment compensation bears the burden of proving that the employee engaged in misconduct (gross or otherwise). 7 DCMR § 312.2; *Brown*, 942 A.2d at

---

**3.** The ALJ's decision was based solely on Ms. Morris's insubordination and failure to follow supervisory instructions in January and February of 2007. He did not make findings of fact or conclusions of law regarding Ms. Morris's being AWOL in the fall of 2006. We therefore do not consider those allegations in our review.

**4.** D.C.Code § 51–110(b) (2001) provides:

(1) For weeks commencing after January 3, 1993, any individual who has been discharged for gross misconduct occurring in his most recent work, as determined by duly prescribed regulations, shall not be eligible for benefits until he has been employed in each of 10 successive weeks (whether or not consecutive) and, notwithstanding § 51–101, has earned wages from employment as defined by this subchapter equal to not less than 10 times the weekly

benefit amount to which he would be entitled pursuant to § 51–107(b).

(2) For weeks commencing after January 3, 1993, any individual who is discharged for misconduct, other than gross misconduct, occurring in the individual's most recent work, as defined by duly prescribed regulations, shall not be eligible for benefits for the first 8 weeks otherwise payable to the individual or until the individual has been employed in each of 8 subsequent weeks (whether or not consecutive) and, notwithstanding § 51–101, has earned wages from employment as defined by this subchapter equal to not less than 8 times the weekly benefit amount to which the individual would have been entitled pursuant to § 51–107(b). In addition, such individual's total benefit amount shall be reduced by a sum equal to 8 times the individual's weekly benefit amount.

1123.[5] "In determining whether an employee has engaged in disqualifying misconduct, [the agency] cannot simply inquire whether the employer was justified in his decision to discharge the employee: 'Not every act for which an employee may be dismissed from work will provide a basis for disqualification from unemployment compensation benefits because of misconduct.'" *Jadallah v. District of Columbia Dep't of Employment Servs.,* 476 A.2d 671, 675 (D.C.1984) (quoting *Hawkins v. District Unemployment Compensation Bd.,* 381 A.2d 619, 622 (D.C.1977)).

Gross misconduct is defined by regulation as

> an act which deliberately or willfully violates the employer's rules, deliberately or willfully threatens or violates the employer's interests, shows a repeated disregard for the employee's obligation to the employer, or disregards standards of behavior which an employer has a right to expect of its employee.

7 DCMR § 312.3. One of the listed examples of gross misconduct is "[r]epeated absence or tardiness following warning." 7 DCMR § 312.4(k). We have said that "[a]ttendance at work is an obligation which every employee owes to his or her employer, and poor attendance, especially after one or more warnings, constitutes misconduct sufficient to justify the denial of a claim for unemployment benefits." *Shepherd v. District of Columbia Dep't of Employment Servs.,* 514 A.2d 1184, 1186 (D.C.1986).

## B. The Effect of Illness

■ District of Columbia regulations specify, however, that prior to a finding of gross misconduct, the employer must prove that the employee's actions were willful and deliberate. 7 DCMR § 312.3. "[T]he regulations ... specifically provide that a component of 'gross misconduct' must include the fact that the conduct was done 'deliberately or willfully' or in 'disregard' of the employee's obligations and expected standards of behavior." *Larry v. National Rehabilitation Hospital,* 973 A.2d 180, 183 (D.C.2009). "The fact of absences or tardiness alone cannot suffice as proof of gross misconduct, without consideration of the bases for such absences or tardiness. This is so even if the absences or tardiness are repeated, although such a factor might be relevant in assessing the ultimate fact of wilfulness or deliberateness." *Id.* at 183 (footnote omitted).

■ Genuine illness that prevents an employee from coming to work negates the willfulness and deliberateness of her absenteeism, thereby preventing a finding of gross misconduct.[6] *See Larry,* at 183 (Pe-

---

**5.** "[A]n employer's contribution to the unemployment compensation fund is affected by the claims experience of its employees...." *American University v. District of Columbia Dep't of Labor,* 429 A.2d 1374, 1375 (D.C.1981). *See* D.C.Code § 51–103(c)(2)(A) (2001); *Hollingsworth v. District of Columbia Unemployment Compensation Bd.,* 375 A.2d 515, 519 (D.C.1977) ("the Board maintains a separate account for each employer, and unemployment benefits paid to his employees are charged to his account"). This provision seems to provide an incentive for employers to characterize a termination as based on misconduct in order to avoid having their accounts charged. *See Hollingsworth,* 375

A.2d at 519 (the statutory scheme rewards employers who "demonstrate by experience over a stated period that compensable layoffs have been held below a certain percentage").

**6.** Courts that have upheld the denial of benefits although the employee has shown that her absence was due to sickness have focused on the claimant's failure to notify the employer of his or her impending absence from work. *See Claim of Ardito,* 254 A.D.2d 562, 678 N.Y.S.2d 699, 699 (N.Y.App.Div.1998); *Brown Hotel Co. v. White,* 365 S.W.2d 306, 307 (Ky.1962); *Drummond v. Unemployment Compensation Bd. of Review,* 193 Pa.Super. 115, 164 A.2d 111, 113 (1960). Here, in

titioner "proffered a reason for her absence [that is, illness] which, if credited, negated any assertion that she acted 'deliberately' or 'willfully.' "); *see also Gilbert v. Dep't of Corrections,* 696 So.2d 416, 418 (Fla.Dist.Ct.App.1997) ("Temporary absence from work because of illness or injury does not constitute misconduct connected with work of a kind that disqualifies a discharged employee from receiving unemployment compensation benefits."); *Garden View Care Center, Inc. v. Labor & Industrial Relations Commission of Missouri,* 848 S.W.2d 603, 606 (Mo.Ct.App. 1993) (collecting cases from various jurisdictions; "absences due to illness or family emergency ... cannot be willful misconduct"); *Runkle v. Commonwealth, Unemployment Compensation Bd. of Review,* 104 Pa.Cmwlth. 275, 521 A.2d 530, 531 (1987) ("An absence due to illness constitutes good cause and does not constitute willful misconduct."); *Kirk v. Cole,* 169 W.Va. 520, 288 S.E.2d 547, 550 (1982) ("When the absence is due to a *genuine* illness [ ], many courts adhere to the general rule that the absences do not constitute misconduct and will not disqualify an employee from receiving unemployment compensation." (emphasis in original)). *See generally* James D. Lawlor, Annotation, *Discharge for Absenteeism or Tardiness as Affecting Right to Unemployment Compensation,* 58 A.L.R.3d 674 § 14(a), (b) (1974). To prove that an employee is guilty of gross misconduct, the employer must prove not only that she was absent without authorization, but also that the absences were willful and deliberate. Therefore, when the employee responds with proof of illness, the employer must demonstrate that her absence was not caused by genuine illness.

## C. The ALJ's Findings and Conclusions

The ALJ found Ms. Morris guilty of gross misconduct based on her "refusal to comply with Employer's direct order that she report for work during the period January 4, 2007, through February 2, 2007." Judge England noted (correctly) that at the time he was hearing this case, there was "little guidance in the statutory or case law addressing the situation where, as here, an employee is discharged from employment for not complying with express orders from her employer to return to work, but asserts that had she returned to work, her health would have been seriously compromised." He therefore considered the "somewhat analogous" situation of an employee who has voluntarily quit her job, claiming that working conditions were detrimental to her health.

 An employee who voluntarily quits her job is not entitled to unemployment compensation benefits unless she proves that she quit for good cause connected with the work. 7 DCMR §§ 311.1, 311.4; *Hockaday v. District of Columbia Dep't of Employment Servs.,* 443 A.2d 8, 10 (D.C. 1982). Judge England found that, in this case, "the evidence to support a claim of good cause [to quit] due to illness or disability caused or aggravated by the work is mixed and would not carry Claimant's burden of proof." He concluded that the employer had proved gross misconduct by showing that Ms. Morris failed to come to work after being ordered to do so.

 As the ALJ recognized, however, the "voluntary quit" analogy is imperfect because, where the employer has shown that the employee quit voluntarily, the pertinent regulation puts the burden of proof on the *employee* to demonstrate that she

---

contrast, the employer does not claim that petitioner failed to call in on any day she was

expected to work in January or February of 2007.

quit for good cause connected with the work. 7 DCMR § 311.4 ("If it is established that a leaving was voluntary, the claimant shall have the responsibility of presenting evidence sufficient to support a finding by the Director of good cause connected with the work for the voluntary leaving."). In contrast, 7 DCMR § 312.2 puts the burden on the employer to demonstrate that the employee is guilty of misconduct, gross or otherwise. This burden of proof (as distinguished from the burden of production) cannot be shifted to the employee.[7]

### D. Proving Gross Misconduct

■ As we noted above, the District of Columbia regulations require the employer to prove each element of gross misconduct. 7 DCMR § 312.2; *The Washington Times,* 724 A.2d at 1218. "Evidence by the employer of repeated absence or tardiness following repeated warnings may establish a prima facie case of gross misconduct. But when the employee proffers evidence suggesting that such actions were sufficiently excusable to negate wilfulness or deliberateness, the burden shifts back to the employer to disprove such evidence. The ultimate burden of showing misconduct is always on the employer." *Larry,* 973 A.2d at 183 n. 4.

■ The EPA made a prima facie showing that Ms. Morris engaged in gross misconduct by being repeatedly absent without authorization. At this point, Ms. Morris was required to produce evidence tending to establish that her absences were caused by genuine illness. She did so by introducing her own testimony, as well as doctors' notes and hospital records. This showing shifted the burden of production back onto the EPA to show that Ms. Morris's absences were not caused by illness. The employer may carry its ultimate burden of proof by, for example, proving that the illness was feigned or that the illness was not severe enough to have caused her to stay home from work.

■ Although, given the circumstances of this case, it certainly was relevant to inquire whether something in the workplace was causing Ms. Morris to be ill, she was not absolutely required to produce evidence of such a link.[8] To meet its burden of proof, the EPA was required to demonstrate that her absenteeism was willful and deliberate, and illness unconnected to the workplace may in some circumstances preclude such a finding.

■ We render no opinion as to whether the EPA presented enough evidence to satisfy its ultimate burden of proof because the ALJ did not determine whether Ms. Morris was actually ill, or would become ill if she returned to the workplace, and whether that illness prevented her

---

7. There is no question that this case arises from a termination, not a "voluntary quit." The EPA thoroughly documented the reasons for its decision to terminate Ms. Morris's employment and informed her that she was being removed from her position. Furthermore, the EPA has not asked us to treat this as a situation where the employee has voluntarily quit her job.

8. The unemployment compensation statute is intended to "provide income for workers who are unemployed through no fault of their own...." *Green v. District of Columbia Dep't of Employment Servs.,* 499 A.2d 870, 875 (D.C.1985) (citation omitted). Therefore, rather than focusing on whether the workplace caused the employee's illness, the proper inquiry is whether the employee herself can be said to be "at fault" for her unemployment. *See Garden View Care Center,* 848 S.W.2d at 606 ("Clearly, absences due to illness or family emergency are absences caused through no fault of Employee and as such cannot be willful misconduct....").

from working from January 3 through February 2.[9] This is a question that the ALJ must determine in the first instance.

The parties presented contradictory evidence on the matter. To support her claim of illness, Ms. Morris presented letters from her doctors describing her severe allergies, which she claimed were triggered by the EPA work site. Ms. Morris also testified that she became seriously ill and required medical assistance when she entered the EPA buildings. On the other hand, the employer presented evidence that the EPA had conducted extensive testing on Ms. Morris's work environment and found that the air quality was superior to that of the outside air. Additionally, the employer questioned the reliability of Ms. Morris's doctors, and impeached the credibility of Ms. Morris herself.[10] It is clear that the EPA came to believe that Ms. Morris was feigning or grossly exaggerating her symptoms.[11]

In *Larry* and in this case, we have addressed for the first time issues concerning the relationship between employee illness and proof of gross misconduct. Consequently, the ALJ may wish to take additional evidence from the parties to clarify whether Ms. Morris suffered from a serious illness. If he determines (1) that she did, and that the illness prevented her from coming to work, or (2) that she would have become seriously ill upon arriving at work, Ms. Morris will not be guilty of gross misconduct. *See Larry*, 973 A.2d at 183 ("it stretches any reasonable definition of [the word 'deliberately'] as used in the regulation to think that a seriously ill person would be expected to

---

9. It is not clear from the record whether Ms. Morris claimed that she was actually ill during the period from January 3 through February 2, or whether her claim was that if she were to come to work, she inevitably would become ill. This distinction is not central to determining whether she is entitled to unemployment benefits, however. If Ms. Morris produces evidence that she was continuously ill throughout that time period, or that she would have become ill had she come to work (regardless of whether that illness was triggered by conditions in the EPA building or by something else), the EPA will have to refute that evidence in order to prove gross misconduct.

10. The employer also presented the decisions of two agencies that addressed related complaints lodged by Ms. Morris. The Equal Employment Opportunity Commission considered Ms. Morris disabled but found that the EPA had "articulated legitimate reasons for its reasonable accommodation decision and Complainant has not produced sufficient evidence that these reasons are pretextual." The Office of Workers' Compensation Programs of the Department of Labor found Ms. Morris's evidence insufficient to establish an injury caused by the workplace. It concluded that "[t]here is nothing to relate your claimed medical condition to your work environment in any of the factual or medical evidence received in your case." While these opinions may assist the ALJ in determining whether Ms. Morris was actually ill, neither decides the issue of whether Ms. Morris engaged in gross misconduct within the meaning of the statutes and regulations governing the award of unemployment compensation.

11. For example, Mr. Richards stated in his notice of proposed removal:

You have never provided any credible proof that any allergic symptoms you experience are caused by the EPA workplace, as opposed to another cause.... [Y]our self-reporting is contrary to the significant body of actual evidence, including the repeated scientific air quality testing done at multiple sites within EPA; your twenty plus year history of allergies; your reported symptomatology during your history as an EPA contractor, as an EPA probationary employee, and as an EPA employee; and a number of admissions, inconsistent statements, and illogical assertions made by your own physicians or yourself. Frankly, as the facts have evolved from December 2004 to date, I have developed increasing doubts about the veracity of your claim of a workplace allergy....

show up for [ ] duty").[12]

## IV. Conclusion

In light of these unresolved questions, we remand this matter to the OAH for further proceedings not inconsistent with this opinion.

*So ordered.*

---

**12.** Here, as in *Larry*, 973 A.2d at 184 n. 5, the parties have not briefed the issue of simple misconduct. Accordingly, we do not address that issue at this time.