DISTRICT OF COLUMBIA DE-
PARTMENT OF MENTAL
HEALTH, Petitioner,

v.

Stacy HAYES, Jr., Respondent.

No. 09–AA–32.

District of Columbia Court of Appeals.

Argued Sept. 10, 2010.

Decided Sept. 20, 2010.*

---

* The decision in this case was originally issued September 20, 2010, as an unpublished Memorandum Opinion and Judgment. It is now being published upon the court's grant of petitioner's motion to publish.

Carl J. Schifferle, Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for petitioner.

No argument was made or brief filed by Stacy Hayes, pro se.

Before THOMPSON and OBERLY, Associate Judges, and FARRELL, Senior Judge.

OBERLY, Associate Judge:

Stacy Hayes, a former employee at Saint Elizabeths Hospital, had a history of poor work attendance that was caused in part by his substance abuse. In January 2008, Hayes pleaded guilty in Maryland state court to misdemeanor possession of a controlled substance other than marijuana. Following a two-month incarceration, Hayes returned to work, but he was told that there was a possibility that he would be fired. Faced with that possibility, Hayes quit and filed for unemployment compensation benefits. A claims examiner within the District of Columbia Department of Employment Services rejected Hayes's claim. Hayes appealed that determination to the Office of Administrative Hearings, and an administrative law judge within OAH reversed the claims examiner's determination. Hayes's employer, the Department of Mental Health ("DMH"), has petitioned this court for review of the ALJ's ruling. DMH first argues that Hayes filed his appeal of the claims examiner's ruling out of time. DMH's second argument is that the ALJ erred in ruling that Hayes was not fired for gross misconduct. We agree with DMH on the merits and therefore grant the petition for review and reverse the ALJ's ruling.

### A. Facts and Procedural History

The District of Columbia Department of Mental Health operates Saint Elizabeths Hospital, a psychiatric hospital located in the District. Most of the patients at the hospital are psychiatric patients; as the

ALJ found, many of the patients have "legal" and/or "criminal issues," and are referred to the hospital for competency evaluations.

Hayes began working at Saint Elizabeths in November 1997, where, during the time period relevant to this case, he was employed as a Forensic Psychiatric Technician. According to Nurse Diane Jones, Hayes's second-line supervisor, Hayes's duties included "direct patient care, ensuring the safety and security of the building and the patients, documentation and to also be a team member for developing treatment plans and patient activities."

When Jones became Hayes's supervisor in January 2007, she was advised by the previous assistant director of nursing that Hayes had a poor attendance record—that is, Hayes "had a leave problem, that he was not coming to work or he was coming to work late or he wasn't coming to work at all and had not called." Jones was led to believe that Hayes's poor attendance record was caused by a substance abuse problem.

In January 2008, Hayes pleaded guilty in Prince George's County, Maryland, to misdemeanor possession of a controlled substance other than marijuana. Hayes was sentenced to four years' imprisonment, with three years and nine months suspended. That same month, Hayes called Jones, told her about the conviction, and requested leave without pay for the period of time that he would be incarcerated in Prince George's County.

Hayes's sentence was reduced for good time, and he returned to work on March 9, 2008. At some point after his return, the Chief Executive Officer of Saint Elizabeths directed Jones to initiate disciplinary action against Hayes. Jones recalled that "[i]t was felt by administration at that time that an employee that has been incarcerated on controlled substance abuses should not be working around patients." Jones explained that there was a concern about patients being treated by someone with a conviction. She also related that the CEO of Saint Elizabeths felt that Hayes "would not be a proper role model for patients that were trying to recover." On May 9, 2008, knowing that he would be fired, Hayes preemptively tendered his resignation.

On May 30, 2008, a DOES claims examiner denied Hayes's claim for unemployment benefits and mailed that determination to Hayes. Hayes testified that he was "confused" about when the time for appeal started to run. Therefore, "approximately five days" after he received the determination, Hayes called DOES, where an unidentified person advised him that he had until June 16th to file his appeal. The ALJ credited Hayes's testimony on this point.

With respect to the legal issues, the ALJ first ruled that Hayes's appeal of the claims examiner's ruling was timely. On the merits, the ALJ ruled that when Hayes resigned from his job, he was "faced with imminent discharge," which meant in turn that he did not quit his job voluntarily within the meaning of the unemployment statute. Petitioner does not challenge this aspect of the ALJ's ruling. Petitioner does challenge, however, the ALJ's conclusions that Hayes's appeal to the OAH was timely and that petitioner failed to prove that Hayes was fired for gross misconduct, *see* D.C.Code § 51–110(b)(1) (2001); 7 DCMR § 312.3.

### B. Standard of Review

■■■ We "must affirm an agency's decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Travelers Indemn. Co. of Illinois v. District of Columbia*

*Dep't of Emp't Servs.*, 975 A.2d 823, 826 (D.C.2009) (citing D.C.Code § 2-510(a)(3)(A) (2001)). " 'Factual findings supported by substantial evidence on the record as a whole are binding on the reviewing court, although this court may have reached a different result based on an independent review of the record.' " *Morris v. EPA*, 975 A.2d 176, 180 (D.C. 2009) (quoting *McKinley v. District of Columbia Dep't of Emp't Servs.*, 696 A.2d 1377, 1383 (D.C.1997)). We "defer to an agency's interpretation of a statute or regulation it is charged with implementing if it is reasonable in light of the language of the statute (or rule), the legislative history, and judicial precedent." *Travelers Indemn. Co.*, 975 A.2d at 826. We do not, however, "accord the same deference to the statutory interpretations of the Office of Administrative Hearings." *Id.* at n. 3 (citing *Washington v. District of Columbia Dep't of Pub. Works*, 954 A.2d 945, 948 (D.C.2008) (noting that "OAH is vested with the responsibility for deciding administrative appeals involving a substantial number of different agencies")); *see also Odeniran v. Hanley Wood, LLC*, 985 A.2d 421, 424 (D.C.2009) (holding that *de novo* review applies to OAH's determination whether employee was terminated for gross misconduct).

## C. Discussion

### 1. Timeliness

When Hayes appealed the claims examiner's determination to OAH, it was "settled" that such an appeal had to be filed within ten calendar days of the mailing of the notice of the determination. *Wright–Taylor v. Howard Univ. Hosp.*, 974 A.2d 210, 213 (D.C.2009); *see* D.C.Code § 51-111(b). On July 23, 2010, however, The Unemployment Compensation Reform Amendment Act, D.C. Law 18-192 (D.C. Act 18-401), became effective, amending

§ 51-111(b). Under the amended version of the law, a party has 15 calendar days to appeal a claims determination. Significantly, the law provides that the "15-day appeal period may be extended if the claimant or any party to the proceeding shows excusable neglect or good cause." *Id.* The "exception for good cause or excusable neglect ... appl[ies] to all claims pending on [July 23, 2010], including those in which an appeal has been filed in the Office of Administrative Hearings or in which a petition for review has been filed in the District of Columbia Court of Appeals." *Id.*

■ The ALJ in this case rendered his order in August 2008, and thus naturally had no occasion to apply the amended version of § 51-111(b) to Hayes's circumstances. Ordinarily, this would mean that we would not opine on the issue either, for the general rule is that if an agency "fails to make a finding on a material, contested issue of fact, this court cannot fill the gap by making its own determination from the record, but must remand the case for findings on that issue." *Morris*, 975 A.2d at 181 (quotation marks omitted).

We conclude, however, that no such remand is necessary because, as we discuss below, the OAH erred in holding that Hayes was eligible for unemployment benefits. Accordingly, we need not remand for a determination whether Hayes's explanation for his late filing satisfied the amended statute's exception for "good cause or excusable neglect," and we leave for another day and another case interpretation of The Unemployment Compensation Reform Amendment Act.

### 2. Merits

■■ A "terminated employee who satisfies the basic requirements of the unemployment compensation statutes is presumed to be eligible for benefits." *Morris*,

975 A.2d at 181 (citing D.C.Code § 51–109). If, however, the employer "proves by a preponderance of the evidence that the employee was fired for misconduct," the presumption is rebutted, "and the employee becomes ineligible for benefits." *Id.* (citing D.C.Code § 51–110). Our law "distinguishes between 'gross misconduct' and 'misconduct, other than gross misconduct,' which we have referred to as 'simple misconduct.'" *Id.* (citing D.C.Code §§ 51–110(b)(1) and (2) and *Chase v. District of Columbia Dep't of Emp't Servs.,* 804 A.2d 1119, 1121–22 (D.C.2002)). "In determining whether an employee has engaged in disqualifying misconduct, the agency cannot simply inquire whether the employer was justified in his decision to discharge the employee: Not every act for which an employee may be dismissed from work will provide a basis for disqualification from unemployment compensation benefits because of misconduct." *Morris,* 975 A.2d at 176 (quotation marks and editing omitted).

▆▆▆ "'A finding of misconduct must be based fundamentally on the reasons specified by the employer for the discharge.'" *Odeniran,* 985 A.2d at 425 (quoting *Chase,* 804 A.2d at 1123). In this case, the ALJ found that petitioner constructively discharged Hayes based upon his conviction of the drug charge in Maryland state court. The ALJ concluded that petitioner failed to meet its burden of showing that it fired Hayes for gross misconduct. We hold that the ALJ was mistaken.

Gross misconduct is defined by regulation as "an act which deliberately or willfully violates the employer's rules, deliberately or willfully threatens or violates the employer's interests, shows a repeated disregard for the employee's obligation to the employer, or disregards standards of behavior which an employer has a right to expect of its employee." 7 DCMR § 312.3. "Use or possession of a controlled sub-stance" is a specifically enumerated example of an act that "may" constitute gross misconduct. 7 DCMR § 312.4(i).

In this case, the facts amply demonstrate that Hayes was fired for gross misconduct. Even before Hayes was convicted of drug possession in Maryland, he already had substance abuse problems that in turn caused his work attendance to suffer. Then, when Hayes was convicted of possession of a controlled substance, he engaged in one example of an act that may constitute gross misconduct. 7 DCMR § 312.4(i). As a result of the conviction, Hayes missed approximately two months of work. Hayes's conviction was troublesome for petitioner even after Hayes returned to work because the management at Saint Elizabeths thought that Hayes's duties, described at page 257, *supra,* made him unsuitable for work with patients and a poor role model for patients trying to recover from their own substance abuse problems. On these facts, the hospital proved by a preponderance of the evidence that it fired Hayes for acts that "deliberately or willfully threaten[ed] or violate[d] the [hospital's] interests" or for "disregard[ing] standards of behavior which an employer has a right to expect of its employee." 7 DCMR § 312.3.

The ALJ's reasons for concluding that petitioner failed to prove that it fired Hayes for gross misconduct do not withstand scrutiny. The ALJ pointed out, for example, that the hospital "knew for almost a year that [Hayes] had a substance abuse problem resulting in a poor attendance record and had not discharged him." This fact, the ALJ concluded, "militate[d] against finding that [the hospital] truly was concerned about having an employee known to have a substance abuse problem working in an environment where there were controlled substances." The ALJ's legal conclusion does not follow from the

facts. As the District argues, whether the Department of Mental Health "should have terminated or disciplined Mr. Hayes earlier has no logical relationship with whether the conduct for which he was eventually terminated constituted gross misconduct." *See Atlas Processing Co. v. Administrator, Dep't of Emp't Sec.*, 584 So.2d 1187, 1190 (La.Ct.App.1991) ("The mere passage of a reasonable time may not act to transform the discharge into something other than for misconduct connected with employment."). Although Saint Elizabeths' delay in discharging Hayes might possibly be relevant to a claim of pretextual firing, nothing in this record suggests that the hospital had an ulterior motive in terminating Hayes's employment.

The ALJ also erred in ruling that the employer failed to explain how a *conviction* for drug possession would make Hayes a "poor role model" for patients who themselves were dealing with substance abuse issues. This ruling flies in the face of logic and common sense, and we are not required to accept it. *See Changkit v. District of Columbia Dep't of Emp't Servs.*, 994 A.2d 380, 389–90 (D.C. 2010) (reversing as "contrary to common sense" ALJ's decision rejecting the opinion of employee's treating physician). It is beyond cavil that an employee who occupied "a position of trust and responsibility" akin to that of Hayes willfully violated the employer's interests and disregarded standards of behavior Saint Elizabeths had a right to expect when, as found by the court that convicted him, he possessed unlawful drugs. 7 DCMR § 312.3.

The ALJ also thought that petitioner failed to prove that Hayes engaged in gross misconduct because "there was no evidence that [Hayes] used or possessed a controlled substance, or was under its influence, while at work." The unemploy-ment statute, the ALJ reasoned, "was not designed or meant to control employee's [sic] private lives." We need not resolve this issue because the other grounds advanced for Hayes's termination, to wit, his drug conviction, constitute gross misconduct regardless of where the conduct occurred. We note, however, that nothing in the language of the statute says that misconduct that disqualifies one from obtaining unemployment benefits must take place at work. The question, rather, is whether the employee was fired for "an act which deliberately or willfully violates the employer's rules, deliberately or willfully threatens or violates the employer's interests, shows a repeated disregard for the employee's obligation to the employer, or disregards standards of behavior which an employer has a right to expect of its employee." 7 DCMR § 312.3. To be sure, acts that take place outside of work often will not meet this standard. But nothing in law or logic says that acts that occur outside of work can never constitute gross misconduct.

■ Finally, the ALJ's references to the liberal purposes of the unemployment statute should not alter the result. It is true, of course, that the unemployment statute is "remedial humanitarian legislation of vast import, and its provisions must be liberally and broadly construed." *The Washington Times v. District of Columbia Dep't of Emp't Servs.*, 724 A.2d 1212, 1216–17 (D.C.1999) (quotation marks and citations omitted); *accord Morris*, 975 A.2d at 181. But "no legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Rodriguez v.*

*United States,* 480 U.S. 522, 525–26, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987) (per curiam).

In this case, through engaging in gross misconduct, Hayes took himself out of the statute's protection. He therefore should not receive the benefits that the statute affords to those who lose their jobs "through no fault of their own." *Budzanoski v. District Unemployment Comp. Bd.,* 326 A.2d 243, 245 (D.C.1974) (quotation marks omitted). This result, although arguably in tension with the broad purposes of the act, is perfectly consistent with the purpose of the misconduct provision.

We therefore grant the petition for review and reverse the order of the OAH holding Hayes eligible for unemployment benefits.

*So ordered.*