Sharion R. LARRY, Petitioner,

v.

NATIONAL REHABILITATION
HOSPITAL, Respondent.

No. 07–AA–1225.

District of Columbia Court of Appeals.

Submitted Dec. 16, 2008.

Decided June 11, 2009.

Sharion Larry, pro se.

Keith J. Harrison, and Christopher P. Calsyn were on the brief, Washington, for respondent.

Before BELSON, TERRY and STEADMAN, Senior Judges.

STEADMAN, Senior Judge:

Petitioner, Sharion R. Larry, appeals the determination by the Office of Administrative Hearings ("OAH") that she is ineligible for unemployment compensation benefits on account of absenteeism that constituted "gross misconduct." The administrative law judge ("ALJ") failed to make a finding about the veracity of Larry's explanation for her absenteeism on the day that led to the discharge, apparently because of the employer's "no fault policy" relating to absenteeism. Such a finding was essential to a determination that Larry's absence was willful or deliberate, a prerequisite to an ultimate finding of "gross misconduct." Therefore, the decision is vacated and the case is remanded for further proceedings.

**I.**

Larry was employed by the National Rehabilitation Hospital ("Hospital") as a nurse's aide from April 10, 2006, until June 23, 2007. After she was discharged for absenteeism, her application for unemploy-ment benefits under D.C.Code § 51–110 (2001) was denied by a claims examiner of the Department of Employment Services. She appealed the claims examiner's decision and an OAH hearing was held. The ALJ made findings of fact that Larry's consistent violations of the Hospital's time and attendance policy constituted gross misconduct under D.C.Code § 51–110(b) and 7 DCMR §§ 312.3 and 312.4, and that she was therefore ineligible for unemployment benefits.

At the OAH hearing, the Hospital offered testimony and evidence regarding its time and attendance policy. The Hospital assessed an employee half a point for being more than five minutes tardy, or for leaving a shift more than five minutes early. An employee was also assessed a point for missing work due to an unscheduled absence.[1] Larry's supervisor testified that the policy was a "no fault" policy and that the Hospital did not "accept documentation from a doctor as excuse of absenteeism." The Hospital had a progressive disciplinary scale in which an employee would receive oral "counseling" after accumulating five points, written counseling after six points, a second written counseling at seven points and the possibility of discharge after eight points. The Hospital eliminated points from an employee's total one year after they were assessed.

Larry had a number of points assessed to her during the course of her employment and had received the required counseling and warnings from the Hospital. As of the morning of June 18, 2007, she had accumulated 9.5 points. (The last

1. A corollary requirement is that an employee give notice of "unplanned absence due to illness or other emergencies" at least three hours before the beginning of a shift. It is unclear from the record whether Larry complied with this advance notice requirement, and no finding was made in that regard. The ALJ's opinion does not even cite this requirement, and it thus appears that the question was not relevant to the imposition of a point for her "unscheduled absence."

points that had been assessed to her were on March 16, 2007, when she received 0.5 points for being tardy.) Larry's scheduled shift that day was from 7:00 a.m. until 3:30 p.m. She called the Hospital to alert her supervisor, Cynthia McDonald, that she was ill and would not be in attendance.[2] McDonald was unavailable at the time, and Larry was told to call later in order to speak with her. Sometime later that morning, Larry was able to speak with McDonald, at which point McDonald told Larry that this unscheduled absence would raise her point total to 10.5 points and would result in her discharge. On June 21, 2007, the Hospital sent Larry a formal notice of termination of employment that stated, in relevant part: "On March 30, 2007, you were given a second written warning for continued unscheduled leave usage. You were again warned that your use of unscheduled leave or tardiness had resulted in progressive disciplinary action and that any further use of unscheduled leave would result in your termination of employment. On June 18, 2007, you called out again using unscheduled leave. In accordance with Nursing Administration's policy # 101.007, Unit Time Management, you are therefore terminated from employment at the National Rehabilitation Hospital effective June 23, 2007." Thus, absent the unscheduled leave on June 18, Larry would not have lost her employment.

In her order, the ALJ correctly states that while D.C.Code § 51–109 (2001) creates a statutory right for unemployment benefits, employees may be disqualified from receiving benefits if they were discharged for misconduct (either "gross" or "other than gross"). D.C.Code § 51–110(b) (2001). That Code subsection directs the agency to define by duly prescribed regulations the statutory terms "gross misconduct" and "misconduct other than gross" and to add to its rules and regulations specific examples of behavior that constitute misconduct within the meaning of the subsection, which it has done. 7 DCMR § 312.3 defines "gross misconduct" as "an act which deliberately or willfully violates the employer's rules, deliberately or willfully threatens or violates the employer's interests, shows a disregard for the employee's obligation to the employer, or disregards standards of behavior which an employer has a right to expect of its employee."[3] One of the eleven examples of gross misconduct listed under the regulations is "Repeated absence or tardiness following warning." 7 DCMR § 312.4(k). The burden of proof is on the employer to establish misconduct. 7 DCMR § 312.2.

Reviewing the evidence, the ALJ concluded that Larry's behavior "exhibited deliberateness" and that her actions "demonstrated a deliberate or willful threat to the [Hospital's] interests or disregard of the employee's obligation to her employer." Therefore, the ALJ concluded that Larry's behavior constituted gross misconduct and rendered her ineligible for unemployment benefits.

## II.

We review OAH decisions to determine whether "(1) OAH made findings

---

2. The record is unclear as to the precise time when Larry notified the Hospital that she would not be in attendance, although it was at some point prior to the commencement of the shift. See note 1, *supra*.

3. This definition appears to be based on, but differs in some respects from, the definition of "misconduct" (without differentiation) under a previously existing statutory provision. *See Chase v. Dep't of Employment Servs.*, 804 A.2d 1119, 1121 n. 3 (D.C.2002). In 1993, the District of Columbia Council amended the statute to provide for two grades of misconduct: "gross misconduct" and "misconduct other than gross." *Id.* at 1121.

of fact on each materially contested issue of fact, (2) substantial evidence supports each finding, and (3) OAH's conclusions flow rationally from its findings of fact." *Rodriguez v. Filene's Basement Inc.*, 905 A.2d 177, 180–81 (D.C.2006) (citations omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 181 (internal quotations and citation omitted). In addition, and importantly here, "OAH's finding of misconduct must be based fundamentally on the reasons specified by the employer for the discharge." *Hegwood v. Chinatown CVS, Inc.*, 954 A.2d 410, 412 (D.C.2008) (internal quotations and citation omitted).

Here, the notice from the Hospital stated that she was being terminated because on June 18, 2007, she called out again using unscheduled leave. The problem as we see it is that the Hospital's "no-fault" policy rendered irrelevant for purposes of discharge the reason for the unscheduled leave. This was in accord with the testimony of the Hospital supervisor that, "Our policy is a no-fault policy. We don't accept documentation from a doctor as excuse of absenteeism." At the hearing, Larry introduced medical, evidence that she was seriously sick on the day in question, and the ALJ mentioned that evidence in her opinion but made no finding on the issue, presumably because of its irrelevance to the Hospital's decision.

However, the regulations of DOES specifically provide that a component of "gross misconduct" must include the fact that the conduct was done "deliberately or wilfully" or in "disregard" of the employee's obligations and expected standards of behavior. Although it may be argued whether, grammatically, the phrase "deliberately or wilfully" applies to "disregard," we think that the word "disregard" carries within it the same requirement in this context.

Here, Larry proffered a reason for her absence which, if credited, negated any assertion that she acted "deliberately" or "wilfully." To be sure, she acted "deliberately" in the sense that she deliberately did not go to work that day, but it stretches any reasonable definition of that word as used in the regulation to think that a seriously ill person would be expected to show up for hospital duty.

It is true that, as already noted, included among the examples of "gross misconduct" is that of "Repeated absence or tardiness following warning." Literally applied, Larry's action here constituted gross misconduct. But this reads the example in isolation from the overarching general definition of gross misconduct. The fact of absences or tardiness alone cannot suffice as proof of gross misconduct,[4] without consideration of the bases for such absences or tardiness. This is so even if the absences or tardiness are repeated, although such a factor might be relevant in assessing the ultimate fact of wilfulness or deliberateness.

Here, as is often the case, in defending a finding of gross misconduct based on repeated absences or tardiness, the employer cites our opinion in *Shepherd v. District of Columbia Dep't of Employment Servs.*, 514 A.2d 1184 (D.C.1986). In that case, we affirmed the denial of unemployment benefits to an employee that was often tardy

4. Evidence by the employer of repeated absence or tardiness following repeated warnings may establish a prima facie case of gross misconduct. But when the employee proffers evidence suggesting that such actions were sufficiently excusable to negate wilfulness or deliberateness, the burden shifts back to the employer to disprove such evidence. The ultimate burden of showing misconduct is always on the employer.

and excessively absent from work. In the course of the discussion, we said, in a much-quoted sentence: "Attendance at work is an obligation which every employee owes to his or her employer, and poor attendance, especially after one or more warnings, constitutes misconduct sufficient to justify the denial of a claim for unemployment benefits." *Id.* at 1186. Clearly, employers have a reason to discharge an employee who does not regularly show up for work; personnel are needed to operate a business. But the issue whether the employee was discharged for "gross misconduct" is a distinct issue which depends on the underlying reasons for the absences. The quoted sentence must be read in the context of the entire opinion. In *Shepherd,* we noted that the employee disputed "many of his employer's allegations" and there was evidence on the record, "which if believed, would support a decision in favor of Mr. Shepherd." *Id.* Obviously, the examiner did not believe those excuses, and hence we upheld the decision.

■ Two factors distinguish *Shepherd* from the present case. First, Shepherd was discharged for a wider range of employment infractions, where Larry's discharge depended on her failure to attend work on June 18, 2007. The key question, then, was whether her absence on that day was willful or deliberate. Second, as already noted, the claims examiner in *Shepherd* "had the chance to observe the witnesses' demeanor and make determinations of credibility" and make a finding of fact that substantial evidence showed that Shepherd's poor work conduct was willful and deliberate and constituted gross misconduct. *Id.* Shepherd offered testimony and had "sufficient opportunity at the hearing to explain the reasons for his poor performance." *Id.* Here, Larry offered her illness as a reason for her absence sufficient to negate a finding of gross misconduct but the ALJ, while admitting the evidence, made no finding as to its credibility.

■ Unemployment compensation benefits are a statutory right for those genuinely eligible under D.C.Code § 51–110(a) (2006), and the statute is to be construed broadly to accomplish the legislative and statutory intent of minimizing the economic burden of unemployment. *See Thomas v. District of Columbia Dep't of Labor,* 409 A.2d 164, 170–71 (D.C.1979). That concern is tempered by our limited function in cases of this kind, which is "simply to determine whether there is substantial evidence to support the decision" of OAH. *Id.* Because we cannot say that there was a finding of fact, supported by substantial evidence, that Larry's failure to attend work on June 18, 2007, was a deliberate and willful act under 7 DCMR §§ 312.3 and 312.4, we must vacate the order and remand this case for further proceedings consistent with this opinion.[5] *See Teamsters Union 1714 v. Public Employee Relations Bd.,* 579 A.2d 706, 709 (D.C.1990) (remanding the case because "we cannot affirm an agency ruling if we cannot confidently ascertain ... its underlying factual determinations") (internal citations and quotations omitted).

*So ordered.*

---

5. The briefs of the parties nowhere discuss "misconduct other than gross" nor, as far as we can tell, was this provision raised before either OAH or the agency. Accordingly, in this appeal, we do not address that issue in any respect.