**Angel BROWN, Petitioner,**

v.

**HAWK ONE SECURITY, INC., Respondent.**

No. 08–AA–927.

District of Columbia Court of Appeals.

Argued April 1, 2010.
Decided Sept. 9, 2010.

Frederic W. Schwartz, Jr., for petitioner.

Michael B. Roberts, Washington, DC, for respondent.

Before REID, GLICKMAN and BLACKBURNE–RIGSBY, Associate Judges.

BLACKBURNE–RIGSBY, Associate Judge:

In this appeal, petitioner Angel Brown challenges a final order (the "Order") from the D.C. Office of Administrative Hearings ("OAH"), which affirmed a determination by the D.C. Department of Employment Services ("DOES") to deny petitioner's claim for unemployment benefits. Brown had been employed by respondent Hawk One Security ("Employer" or "respondent") as a Special Police Officer at Ballou Senior High School until she was fired for fighting another uniformed, on-duty officer in the school hallway. Petitioner argues that OAH's conclusion that she was fired for "gross misconduct" is not supported by substantial record evidence. We disagree, and we affirm.

## I. Factual Background

The material facts in this case are largely undisputed. Petitioner concedes that she was involved in a physical altercation with her colleague, Sergeant Diane Williams, in a hallway at Ballou Senior High School while both were on duty and in uniform on March 11, 2008. The circumstances leading up to the incident are also undisputed. Employer hired petitioner as a Special Police Officer about a year earlier, on March 22, 2007, and petitioner's training included an Employer-sponsored course in conflict resolution and public relations. At some point prior to the morning of the incident, a "Special Education" student threw a piece of paper at petitioner. Then, as described by OAH,

> [t]he student was taken to the security office together with [petitioner], who said in front of the student something to the effect of "if he hits me in the face

again with another piece of paper it won't be that's it, that's all." At this point, another Special Police Officer, Sergeant Diane Williams, told [petitioner] that she should not make threats to a student. After this, [petitioner] told other Special Police Officers and several school staff members that Sgt. Williams had told the student to go home and tell his mother that [petitioner] made a threat against him.

On the morning of March 11, 2008, Sgt. Williams confronted [petitioner], while [petitioner] was on duty and in uniform, in the vicinity of the school cafeteria, while students were present. Sgt. Williams asked [petitioner] if she could talk with [petitioner]. [Petitioner] responded by saying that she could not speak with anyone without her union representative or supervisor being present. Sgt. Williams responded by saying something to the effect of "if you cannot talk to me without a union representative, then keep my name out of your mouth before I smack the [expletive] out of you." Sgt. Williams then turned away and proceeded down the hallway. [Petitioner] came up behind Sgt. Williams, circled around her and said at least twice, in a taunting manner, something to the effect of "Who are you going to smack?" Sgt. Williams then hit [petitioner] in the mouth.[1]

At that point, Brown and Williams were forcibly separated and escorted to the school's security office by a third on-duty security officer. Following Employer's investigation into the incident, Brown and Williams were both terminated. Petitioner then applied for unemployment compensation, which the DOES claims examiner

---

1. During the administrative hearing below, petitioner disputed that she said "Who are you going to smack?" more than once. But OAH found that Brown repeated the question at least twice, and in petitioner's brief to this court, she apparently concedes that she repeated the question "several times." OAH also made an express finding that petitioner was "taunting" Sgt. Williams.

denied, based upon his finding that Brown "was discharged ... for fighting on the job."

OAH affirmed the decision of the DOES claims examiner, finding that Brown's conduct constituted "gross misconduct" on two different theories, each of which was sufficient to deny her claim for unemployment benefits. First, OAH found that Brown's actions "deliberately or willfully threatened or violated Employer's interests in maintaining the peace and setting a good example to the students." Second, OAH concluded that Brown "also showed a disregard for standards of behavior which Employer had a right to expect of its employee."

## II. Legal Analysis

■ As we noted recently in *Larry v. Nat'l Rehab. Hosp.*, 973 A.2d 180, 184 (D.C.2009), this court has a "limited function in cases of this kind, which is simply to determine whether there is substantial evidence to support the decision of OAH." (internal quotation marks omitted). Indeed, we must affirm the OAH's decision as long as "(1) OAH made findings of fact on each materially contested issue of fact, (2) substantial evidence supports each finding, and (3) OAH's conclusions flow rationally from its findings of fact." *Hegwood v. Chinatown CVS, Inc.*, 954 A.2d 410, 412 (D.C.2008) (internal quotation marks omitted). "We defer to agency findings of fact so long as they are supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 412 (internal quotation marks omitted).

■ Petitioner's principal argument on appeal is that her behavior did not constitute "gross misconduct." *See* D.C.Code § 51–110(b)(1) (2001); 7 DCMR § 312.3.[2] At the outset, petitioner contends that OAH improperly mischaracterized her conduct as "fighting" because she never touched or even attempted to touch Sgt. Brown. She argues that her behavior could not possibly constitute "gross misconduct" because she was merely the victim of an assault. But OAH considered this argument and rejected it, and we cannot say that OAH's conclusions are not supported by substantial evidence. It is clear from the record that OAH's determination was not based upon a misunderstanding of Brown's involvement in the incident. Rather, OAH fully recognized that petitioner did not touch Sgt. Williams, and its conclusion that she engaged in "gross misconduct" was clearly predicated upon substantial record evidence about petitioner's own actions that preceded the physical contact. *See, e.g.,* Order at 7 ("Although Sgt. Williams physically assaulted [petitioner], [petitioner] deliberately provoked the assault.").

Relatedly, petitioner argues that her conduct did not amount to "gross misconduct" because, at worst, it was conduct "other than gross misconduct" as that term is defined in 7 DCMR § 312.5.[3] As

**2.** Petitioners often challenge findings of "gross misconduct" because, as we observed in *Odeniran v. Hanley Wood, LLC*, 985 A.2d 421, 425 (D.C.2009), "[b]eing discharged for gross misconduct has a different impact on unemployment benefits than being discharged for simple misconduct."

**3.** In particular, petitioner argues that from among the examples listed in 7 DCMR §§ 312.4 and 312.6, her conduct most closely resembles "[i]nappropriate use of profane or abusive language," which is listed as an example of "simple misconduct." We disagree; in our view, none of the examples on either list really describes petitioner's conduct here, i.e., "deliberately provok[ing]" a physical confrontation with another uniformed, on-duty security officer in a school hallway. In any event, we have made clear that these examples are "illustrative, not exhaustive." *Odeniran, supra,* 985 A.2d at 426; *see* 7 DCMR § 312.4 (listing acts that "may" constitute

we observed in *Doyle v. NAI Personnel, Inc.*, 991 A.2d 1181, 1182 n. 1 (D.C.2010), we have "grappled repeatedly" with similar challenges in the recent past. As defined in 7 DCMR § 312.3, "gross misconduct" is:

> an act which deliberately or willfully violates the employer's rules, deliberately or willfully threatens or violates the employer's interests, shows a repeated disregard for the employee's obligation to the employer, or disregards standards of behavior which an employer has a right to expect of its employee.

"Simple misconduct," on the other hand, is defined in 7 DCMR § 312.5 as:

> an act or omission by an employee which constitutes a breach of the employee's duties or obligations to the employer, a breach of the employment agreement or contract, or which adversely affects a material employer interest. [Simple misconduct] shall include those acts where the severity, degree, or other mitigating circumstances do not support a finding of gross misconduct.

■ As we have held, the types of conduct that constitute "gross misconduct" are "narrower than what might come within a literal definition" of that term. *See Odeniran, supra,* 985 A.2d at 426. Indeed, in both *Doyle, supra,* 991 A.2d at 1184, and in *Odeniran, supra,* 985 A.2d at 427, we reversed findings of "gross misconduct" because the conduct at issue in those cases was not egregious enough to constitute "gross misconduct."

In *Odeniran,* we held that an employee's "intentional fail[ure] to do his work throughout a single day despite being chided by his superiors" did not, as a matter of law, rise to the level of "gross misconduct." 985 A.2d at 422. We reasoned that while

"insubordination" is listed among the examples of "gross misconduct" in 7 DCMR § 312.4, its appearance "alongside arson, threats, drug use, and the like strongly suggests that the regulation did not contemplate that *every* instance of what literally might be termed insubordination ... would qualify as gross misconduct." *Id.* at 426 n. 2 (italics in original); *see also id.* at 426 (noting that "the list of examples in 7 DCMR § 312.4 is illustrative, not exhaustive"). We went on to note that "if viewed in a vacuum, the definitions of gross misconduct and simple misconduct both could be read to cover an intentional failure to work." *Id.* at 428. Thus, in order to preserve the distinction between "gross misconduct" and "simple misconduct," we held that Odeniran's actions—i.e., making a "conscious decision to spend the day on the Internet instead of doing his job despite being chided more than once"—did not "constitute gross misconduct within the meaning of the unemployment benefits statute." *Id.* at 427, 430.

Similarly, in *Doyle,* we reversed a finding of "gross misconduct" where the employee "deliberately and willfully" failed to follow one of her employer's rules. 991 A.2d at 1182. The employer in *Doyle* was a staffing company and it had a rule requiring all of its employees to notify it as soon as their temporary placements ended. *Id.* The ALJ in that case found that Doyle was terminated for "gross misconduct" because she knew about the rule and she deliberately failed to follow it. We reversed, however, reasoning that Doyle's conduct—i.e., her "intentional failure" to notify her employer about her availability for reassignment—was even less egregious than "the deliberate refusal to do work

gross misconduct); 7 DCMR § 312.6 (listing acts that "may" constitute simple misconduct).

despite reproof found insufficient in *Odeniran.*" *Id.* at 1184.

Thus, in both *Doyle* and *Odeniran,* we held as a matter of law that the conduct at issue in those cases did not rise to the level of "gross misconduct." Here, on the other hand, petitioner was not terminated for merely surfing the Internet or failing to notify her employer that she was available for reassignment; rather, Brown was terminated in this case because she "deliberately provoked" a physical confrontation with another uniformed, on-duty security guard in a school hallway. Specifically, OAH concluded that Brown's conduct constituted "gross misconduct" for two independent reasons. First, OAH found that Brown's actions "deliberately or willfully threatened or violated Employer's interests in maintaining the peace and setting a good example to the students." Second, OAH concluded that Brown "also showed a disregard for standards of behavior which Employer had a right to expect of its employee." Both of these conclusions track the language of the definition for "gross misconduct" found in 7 DCMR 312.3.

In *Odeniran,* we held that a deliberate refusal to work for an entire day does not constitute "gross misconduct" even though "one could say, without doing violence to the English language, that the literal definition of gross misconduct given in § 312.3 describes the conduct" for which Odeniran was fired. 985 A.2d at 427. Similarly, in *Doyle,* we held that Doyle's acts were not egregious enough to constitute "gross misconduct" even though the definition in 7 DCMR 312.3 specifically includes "deliberately or willfully" violating an employer's rules. 991 A.2d at 1184. In both of those cases, we emphasized the importance of

preserving the "statutory distinction" between gross and simple misconduct, which our law has recognized since 1993. *See Odeniran, supra,* 985 A.2d at 427; *Doyle, supra,* 991 A.2d at 1183 ("an employer seeking to prove that its business interests were jeopardized by an employee's action enough to warrant a finding of gross misconduct must make a heightened showing of seriousness or aggravation, lest the statutory distinction between gross and 'simple' misconduct, in our law since 1993, be erased"). Brown's conduct in this case, by contrast, is sufficiently egregious that OAH's finding of "gross misconduct" presents no such danger of blurring the distinction between the two categories of misconduct.

In this case, Employer's "interest" was more than just a general business interest. *Compare, e.g., Doyle, supra,* 991 A.2d at 1182, 1183 (reversing a finding of "gross misconduct" where the employee "deliberately and willfully" violated her employer's "business interest" in having its employees report for work). Here, OAH concluded that Ms. Brown's employer had a legitimate interest "in keeping the peace and setting a good example [for] the students." Indeed, petitioner was stationed at Ballou Senior High School for that very purpose and Employer had even paid for petitioner to receive extra training in conflict resolution and public relations. But petitioner did not need special training to know that she should have walked away instead of "deliberately provok[ing]" a fight with another uniformed, on-duty security officer in a school hallway.[4] In sum, while the conduct in *Doyle* and *Odeniran* was not sufficiently egregious to constitute "gross misconduct," we have no doubt that peti-

---

4. It hardly bears repeating, but as OAH patiently explained, petitioner "could have walked away when Sgt. Williams turned and walked away. This would have been consis-

tent with Employer's interest in keeping the peace and setting a good example for the students, and consistent with standards Employer had a right to expect."

tioner's conduct here falls squarely within that category.

 Finally, we reject petitioner's argument that OAH's finding of misconduct was based on something other than the reason why she was fired. As we have held, OAH's "finding of misconduct must be based fundamentally on the reasons specified by the employer for the discharge." *Hegwood, supra,* 954 A.2d at 412–13. Here, petitioner argues that she was fired for "fighting" but then OAH denied her unemployment benefits for failing to walk away after Sgt. Williams threatened to "smack the [expletive] out of [her]." Petitioner's argument is without merit. In explaining what petitioner could or should have done differently in her interactions with Sgt. Williams immediately preceding the physical contact, OAH remarked that petitioner could have walked away, and that doing so would have been "consistent with Employer's interests in keeping the peace and setting a good example for the students, and consistent with standards Employer had a right to expect." Instead of walking away, however, petitioner taunted Sgt. Williams, and OAH concluded that by causing the fight Brown "deliberately or willfully threatened or violated Employer's interests . . . [and] showed a disregard for standards of behavior which Employer had a right to expect of its employee." Both of these conclusions flow rationally from OAH's findings of fact, which are supported by substantial record evidence.[5] Accordingly,

we must affirm. *Hegwood, supra,* 954 A.2d at 412.

*So ordered.*

---

5. Parenthetically, petitioner also challenges a couple of fleeting remarks in OAH's order that she argues are not supported by substantial evidence. For example, petitioner claims that there is not substantial evidence to support OAH's finding that the incident took place in front of "students"—although she concedes that at least one student was in the vicinity at the time of the fight. Even if we

interpreted such fleeting remarks as true factual findings, and even if they were indeed unsupported by substantial evidence, we cannot say that any of them were material with regard to OAH's conclusion that petitioner's act of "deliberately provok[ing]" a physical confrontation with another uniformed security officer in a school hallway during school hours was "gross misconduct."