Galal **BADAWI**, Petitioner,

v.

**HAWK ONE SECURITY, INC., Respondent.**

**No. 09–AA–246.**

District of Columbia Court of Appeals.

Submitted Sept. 27, 2010.

Decided June 16, 2011.

Galal Badawi, pro se.

Respondent did not file a brief.

Before RUIZ and BLACKBURNE–RIGSBY, Associate Judges, and REID,* Associate Judge, Retired.

BLACKBURNE–RIGSBY, Associate Judge.

Petitioner Galal Badawi seeks review of an Office of Administrative Hearings ("OAH") order denying his claim for unemployment compensation benefits. An Administrative Law Judge ("ALJ") of the

OAH affirmed the determination of the Department of Employment Services ("DOES") concluding that Badawi was ineligible for unemployment compensation benefits because he was fired for gross misconduct. Badawi had been employed by respondent Hawk One Security ("Hawk One") as an armed Special Police Officer ("SPO") at a government building located at 609 H Street, N.E., in the District of Columbia, until he was fired based on three reasons arising out of a single incident: (1) violating Hawk One's firearms policy by removing his firearm while on duty and leaving it in an unsecured desk drawer; (2) inattentiveness to duties; and (3) being out of uniform.

■ Recently, several of our unemployment compensation cases have addressed and attempted to clarify the often-blurred distinction between "gross misconduct" and "simple misconduct." In this case, we conclude that the ALJ committed legal error because he failed to make findings of fact as to whether Badawi's proffered reason for his conduct was "sufficiently excusable"—a critical determination for assessing whether, as a matter of law, Badawi's conduct constituted simple or gross misconduct under our statutory scheme. Furthermore, the ALJ erred by failing to consider the two statutory levels of misconduct recognized under our law, simple and gross. Usually, we would remand the case to the ALJ for further fact finding. In this case, however, even if the ALJ were to make a finding that Badawi's proffered reason was not "sufficiently excusable," the substantial evidence in the record would establish only simple misconduct as a matter of law. Therefore, we are constrained to reverse the ALJ's determination that Badawi's actions amounted to

---

* Judge Reid was an Associate Judge of the court at the time the case was submitted.

Her status changed to Associate Judge, Retired, on April 7, 2011.

gross misconduct, to hold that Badawi's actions amounted to simple misconduct, and to remand for further proceedings consistent with this opinion.

## I. Factual and Procedural Background

Badawi worked for Hawk One as an SPO stationed at the front lobby security desk in a government office building from July 2, 2005, until he was terminated on September 9, 2008. On September 8, 2008, Badawi worked his daily shift from 4:00 p.m. to 12:00 a.m. He took an unauthorized break that day to pray and end his fast in observance of the Muslim religious holiday of Ramadan. Another officer passed Badawi's post while he was praying and reported the incident to Badawi's supervisor. The officer reported that he found Badawi without his gun and shoes, kneeling and praying behind the security desk, while people were walking through the lobby area. Badawi had removed his gun and placed it in the desk drawer at his security post before removing his shoes and kneeling behind the desk to pray. He had removed the bullets from the gun before placing it in the desk drawer. Hawk One subsequently fired Badawi because he removed his gun while on duty, in violation of Hawk One's firearms policy, was inattentive to duty, and was out of uniform. Prior to this incident, Badawi had never been reprimanded by Hawk One for any work-related violations. Badawi filed his claim for unemployment compensation benefits with DOES within a few weeks of his firing. DOES found that Badawi's violation of Hawk One's firearms

policy was "willful and constitute[d] misconduct," and that he was therefore disqualified from receiving benefits.[1] Badawi appealed the DOES determination, and an evidentiary hearing was held before the ALJ at OAH.

Hawk One's sole witness at the hearing was Captain Frederick Gamble, Badawi's supervisor. Gamble stated that at approximately 6:00 p.m., on September 8, 2008, he received a dispatch call stating that a D.C. Protective Services ("DCPS")[2] officer was at the building and requesting a supervisor's immediate response. When Gamble arrived at the building ten minutes later, the building was unlocked, and he saw DCPS Officer Williams with Badawi. Williams informed Gamble that when he arrived at the building at 5:50 p.m., he found Badawi without his shoes, kneeling and praying on a rug behind the security desk. Badawi did not have his gun. Williams noticed that people were passing through the lobby area during this time. Williams asked Badawi where his weapon was, and Badawi pulled his service revolver out of the desk drawer. Badawi acknowledged to Gamble that Officer Williams' statements were true. Gamble then took Badawi's weapon, called the dispatcher's office to have another SPO replace Badawi, and proceeded to write the incident report and employee reprimand reports, which Badawi signed.

Gamble's testimony included a description of the standard procedure for scheduled breaks when a Hawk One SPO works an eight-hour shift. He testified that there are Hawk One employees called

---

1. Specifically, DOES determined that Badawi "knew about the [employer's firearms] rule, it was a reasonable rule, and it was consistently enforced by the employer." Although DOES did not cite to any authority, these three criteria mirror the language of 7 DCMR § 312.7 (2008), the regulation that applies when an

employee's violation of his employer's rule is the underlying basis for disqualification from unemployment compensation benefits.

2. Hawk One had a contract to provide security at the building, and DCPS oversaw Hawk One's contracts.

"breakers," who rotate from post-to-post to relieve SPOs for scheduled breaks by taking the weapon from the SPO in a secured area and assuming the duties of that post while the SPO is on break. Gamble testified that because Badawi's shift began at 4:00 p.m., the breaker would not have come on site until 6:00 or 7:00 p.m. Additionally, he stated that because he was the one who assigned the breakers, he knew that there was one scheduled for Badawi's shift on September 8, 2008. Gamble testified that after he arrived at the building at approximately 6:10 p.m., he called the breaker to tell him about the incident, and the breaker then replaced Badawi at his post.

Badawi disputed Gamble's testimony with respect to four material facts. First, he disputed the time at which he was seen praying at work. He contended that he prayed for approximately three minutes between 7:10 and 7:15 p.m. Second, he claimed that there were no people coming in and out of the building at the time he was praying. Third, he claimed that after 7:00 p.m. every day, the building doors were locked so no one could come inside or go out. Only Badawi and DCPS had the master key. Finally, Badawi claimed that, since his hiring, he worked his eight-hour shifts without ever receiving relief from a breaker. The ALJ resolved the first three disputed material facts by discrediting Badawi's testimony and crediting Gamble's testimony. As such, the ALJ found that the time of the incident was approximately 6:00 p.m., and that there were people in the building as Gamble had testified. Thus, the ALJ concluded that Badawi "was not using all of his senses to ensure that the employees and the public in an unlocked building were protected at all times at his workplace." However, the ALJ failed to make findings on the last disputed fact—whether Badawi had ever been provided relief from a breaker. We think this was a critical omission by the ALJ because whether Badawi ever received relief from a breaker was relevant to his state of mind and the deliberateness or willfulness of his actions. Badawi's state of mind was a critical factor in resolving the ultimate legal question of whether his conduct, as a matter of law, amounted to simple or gross misconduct.

Despite failing to make findings on the last disputed fact, the ALJ affirmed the DOES determination, finding that Badawi's conduct amounted to gross misconduct.[3] The ALJ determined that Badawi's conduct amounted to gross misconduct based on 7 DCMR § 312.3 because "[b]ased on the totality of the evidence ... [Badawi's] actions were a willful violation of [Hawk One's] interests, and ... disregard[ed] ... the standards of behavior which [Hawk One] had a right to expect of its employees...." The ALJ found, based upon the evidence presented at the hearing, that "[Hawk One] considered the three reasons for [Badawi's] discharge [firearms policy violation, inattentiveness to duties, and being out of uniform] mutually dependent, and proved each one by a preponderance of the evidence." The ALJ also found, however, that Hawk One did not consistently enforce the firearms policy that Badawi violated by removing his gun. Badawi timely filed his petition for review of the ALJ's Order with this court, and he challenges the ALJ's determination of gross misconduct and the same facts that

---

**3.** Although DOES did not explicitly find that Badawi had been discharged for gross misconduct, it cited to D.C.Code § 51–110(b)(1) (2001), the statutory provision that disqualifies employees who have been terminated for gross misconduct from receiving unemployment compensation benefits.

were in dispute at the hearing.[4]

## II. Discussion

Our review of agency decisions is "limited," and we review OAH decisions solely to determine whether "(1) [the ALJ] made findings of fact on each materially contested issue of fact, (2) substantial evidence supports each finding, and (3) [the ALJ's] conclusions flow rationally from its findings of fact." *Larry v. Nat'l Rehab. Hosp.*, 973 A.2d 180, 182–83, 184 (D.C.2009) (quoting *Rodriguez v. Filene's Basement Inc.*, 905 A.2d 177, 180–81 (D.C.2006)) (internal quotation marks omitted). We defer to the ALJ's factual findings as long as "they are supported by substantial evidence." *Hegwood v. Chinatown CVS, Inc.*, 954 A.2d 410, 412 (D.C.2008) (quoting *Giles v. District of Columbia Dep't of Emp't Servs.*, 758 A.2d 522, 524 (D.C.2000)) (internal quotation mark omitted). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Giles, supra,* 758 A.2d at 524 (quoting *Gardner v. District of Columbia Dep't of Emp't Servs.*, 736 A.2d 1012, 1015 (D.C.1999)) (internal quotation mark omitted). However, we review the ALJ's legal conclusions of whether a terminated employee's actions constitute gross or simple misconduct *de novo. Ode-*

*niran v. Hanley Wood, LLC,* 985 A.2d 421, 424 (D.C.2009).

As defined in 7 DCMR § 312.3, "gross misconduct" is:

> an act which deliberately or willfully violates the employer's rules, deliberately or willfully threatens or violates the employer's interests, shows a repeated disregard for the employee's obligation to the employer, or disregards standards of behavior which an employer has a right to expect of its employee.

"Other than gross misconduct," which we have referred to as "simple misconduct," on the other hand, is defined in 7 DCMR § 312.5 as:

> an act or omission by an employee which constitutes a breach of the employee's duties or obligations to the employer, a breach of the employment agreement or contract, or which adversely affects a material employer interest. [Simple misconduct] shall include those acts where the severity, degree, or other mitigating circumstances do not support a finding of gross misconduct.

In every unemployment compensation case, the employer bears the burden of proving that the employee engaged in misconduct. *See, e.g., Larry, supra,* 973 A.2d at 183 n. 4; *District of Columbia*

---

4. He also alleges, for the first time on appeal, that age discrimination was a factor in his termination based upon his belief that Hawk One discriminates against older officers with more experience and benefits. Badawi filed a Charge of Discrimination with the D.C. Office of Human Rights on November 13, 2008, alleging religious discrimination. We could not discern the status of this claim from the record. In any event, we do not reach Badawi's claim of age discrimination that he raises for the first time in his petition for review of the ALJ's Order. Absent a showing of "exceptional circumstances" in the "interests of justice," we cannot consider arguments "not presented before the administrative agency at the appropriate time." *See*

*Goodman v. District of Columbia Rental Hous. Comm'n,* 573 A.2d 1293, 1301 (D.C.1990) (citations omitted). At the hearing, Badawi claimed he "want[ed] justice" because he "[did not] have anything" and he "ha[d] children and need[ed] food and . . . heat," but he did not mention discrimination. Notably, the ALJ did not address the age discrimination claim in the ALJ's Order. Thus, we cannot decide the age discrimination claim because the D.C. Office of Human Rights was the appropriate agency before which Badawi should have raised the claim, and Badawi does not demonstrate exceptional circumstances in the interests of justice for failing to raise the claim before the ALJ at the hearing.

*Dep't of Mental Health v. Hayes,* 6 A.3d 255, 259 (D.C.2010); *Morris v. EPA,* 975 A.2d 176, 184 (D.C.2009); *see also* 7 DCMR § 312.2. In order to conclude that the employee engaged in gross misconduct under our statutory scheme, the ALJ must first find that the employee acted deliberately or willfully. *See, e.g., Benjamin v. Washington Hosp. Ctr.,* 6 A.3d 263, 269–70 (D.C.2010); *(Angel) Brown v. Hawk One Sec., Inc.,* 3 A.3d 1142, 1146–48 (D.C.2010); *Doyle v. NAI Personnel, Inc.,* 991 A.2d 1181, 1183–84 (D.C.2010); *Odeniran, supra,* 985 A.2d at 428; *see also* 7 DCMR § 312.3. The types of deliberate or willful behavior "that constitute gross misconduct are narrower than what might come within a literal definition of that phrase." *Odeniran, supra,* 985 A.2d at 426 (citing *Long Island Care at Home, Ltd. v. Coke,* 551 U.S. 158, 170, 127 S.Ct. 2339, 168 L.Ed.2d 54 (2007)). Thus, in determining whether the employee acted deliberately or willfully, we distinguish between the employer's asserted reason for discharging the employee and the issue of whether an employee was discharged for gross misconduct by examining the "underlying reasons" for the employee's behavior. *Larry, supra,* 973 A.2d at 184. In examining the "underlying reasons" for the employee's behavior, we bear in mind that "when an employee proffers evidence suggesting that such actions were sufficiently excusable to negate willfulness or deliberateness [required for a finding of gross misconduct], the burden shifts back to the employer to disprove such evidence." *Id.* at 183 n. 4, 184.

 Normally, when an agency fails to make a finding on a materially contest-ed issue of fact, we do not "fill the gap by making [our] own determination from the record, but must remand the case for findings on that issue." *Morris, supra,* 975 A.2d at 181 (quoting *(Charlita) Brown v. Corr. Corp. of Am.,* 942 A.2d 1122, 1125 (D.C.2008)) (internal quotation mark omitted); *see also Douglas–Slade v. U.S. Dep't of Transp.,* 959 A.2d 698, 702 (D.C.2008) ("An appellate court cannot stand in the place of an administrative agency and attempt to determine how the administrative agency would have decided a matter if part of its decisional base is in error for failure to address all relevant contentions."). "Given the serious consequences that a finding of gross misconduct entails, we must remand when the [ALJ] has failed to make explicit and clear findings sufficient to bring [the] petitioner within the disqualification provisions of § 51–110(b)." *Chase v. District of Columbia Dep't of Emp't Servs.,* 804 A.2d 1119, 1124 (D.C.2002) (citing *Giles, supra,* 758 A.2d at 526–27; *Long v. District of Columbia Dep't of Emp't Servs.,* 570 A.2d 301, 303–05 (D.C.1990)).[5]

However, in some instances where we have found that substantial evidence in the record dictated a different result as a matter of law, we have reversed without remanding for additional fact finding. *See, e.g., Odeniran, supra,* 985 A.2d at 425, 430.

 Here, because Badawi proffered evidence suggesting that his behavior was "sufficiently excusable," which the ALJ failed to address, the ALJ committed legal error in placing the burden on Badawi to disprove such evidence and failing to make a finding of fact on the issue. As noted above, the ALJ was required to determine at a minimum whether Badawi acted delib-

---

**5.** The relevant portion of D.C.Code § 51–110(b)(1) states:

[A]ny individual who has been discharged for gross misconduct occurring in his most recent work, as determined by duly pre-scribed regulations, shall not be eligible for benefits until he has been employed in each of 10 successive weeks (whether or not consecutive). . . .

erately or willfully in order to conclude that Badawi engaged in gross misconduct. *See, e.g., Benjamin, supra*, 6 A.3d at 269–70; *(Angel) Brown, supra*, 3 A.3d at 1146–48; *Doyle, supra*, 991 A.2d at 1183–84; *Odeniran, supra*, 985 A.2d at 428; *see also* 7 DCMR § 312.3. Badawi admitted that he prayed while at work on September 8, 2008, and he also acknowledged that he made "a mistake" in violating Hawk One's firearms policy and procedures that day. Hawk One used these admissions to establish that Badawi acted deliberately and willfully to meet its burden of proving that Badawi engaged in gross misconduct. *See e.g., Larry, supra*, 973 A.2d at 183 n. 4; *Hayes, supra*, 6 A.3d at 259; *Morris, supra*, 975 A.2d at 184; *see also* 7 DCMR § 312.2. However, Badawi countered by proffering evidence of a "sufficiently excusable" justification to negate a finding that he deliberately and willfully violated Hawk One's firearms policy. *See Larry, supra*, 973 A.2d at 183 n. 4. Badawi contended that he never received a break during his eight-hour shifts, leaving him with no choice but to pray at his desk. At that point, the burden then shifted back to Hawk One to disprove Badawi's evidence of this "sufficiently excusable" justification. However, the ALJ erred because he placed the burden on Badawi by finding that he "presented no evidence during the hearing to show that he had requested any type of accommodation from [Hawk One] to meet the requirements of his religion that he pray, or that [Hawk One] had ever denied [any] such request." Furthermore, although the ALJ concluded that Badawi acted deliberately or willfully, the ALJ erred in failing to make a finding on the materially contested issue of fact of whether Badawi ever received relief from a breaker while on duty, an issue that was material because it was relevant to Badawi's state of mind. If the ALJ had credited Badawi's testimony that he never received relief while on the job, the ALJ might have then found that Badawi did not act with the requisite state of mind (i.e., deliberately or willfully) to constitute gross misconduct, as Badawi would not have expected to receive a breaker to relieve him and hold onto his gun while he prayed. *See Chase, supra*, 804 A.2d at 1124; *see also Morris, supra*, 975 A.2d at 185–86; *Larry, supra*, 973 A.2d at 184. Thus, we cannot affirm the ultimate conclusion of gross misconduct because we cannot say that the ALJ made findings of fact on every materially contested issue of fact or that his conclusions flowed rationally from the findings.

■ Moreover, we review the ALJ's determination to ensure that the ALJ considers both levels of statutory misconduct—simple and gross—when assessing whether an employee's conduct constitutes misconduct. After making the requisite factual findings, the ALJ must determine whether the employee engaged in simple misconduct under 7 DCMR §§ 312.5 and 312.6 or gross misconduct under 7 DCMR §§ 312.3 and 312.4. *See Washington Times v. District of Columbia Dep't of Emp't Servs.*, 724 A.2d 1212, 1220–21 (D.C. 1999) (remanding because the agency omitted any reference to "the existence of two statutory levels of misconduct," noting that "a reviewing court should not assume that the issue has been considered *sub silentio* when there is no discernible evidence that it has"). In particular, DOES regulations provide that simple misconduct includes those acts where "the severity, degree, or other mitigating circumstances do not support a finding of gross misconduct." 7 DCMR § 312.5. Additionally, 7 DCMR § 312.6 enumerates examples of simple misconduct, such as "[c]onducting unauthorized personal activities during business hours." In contrast, we have noted that 7 DCMR § 312.4 articulates exam-

ples of gross misconduct, such as "sabotage," "arson," and "threats," all of which "are far more egregious than every act that literally" could be deemed "gross misconduct" under 7 DCMR § 312.3. *Odeniran, supra,* 985 A.2d at 426.

■ Careful consideration of the two types of misconduct is important because of the consequences to an employee's right to receive unemployment compensation benefits. We have repeatedly noted that "[u]nemployment compensation benefits are a statutory right for those genuinely eligible ... and the statute is to be construed broadly to accomplish the legislative and statutory intent of minimizing the economic burden of unemployment." *Larry, supra,* 973 A.2d at 184 (citing *Thomas v. District of Columbia Dep't of Labor,* 409 A.2d 164, 170–71 (D.C.1979)). However, when an employee engages in gross misconduct, he takes "himself out of the statute's protection." *Hayes, supra,* 6 A.3d at 261. Thus, a finding of gross misconduct must be based on "sufficiently egregious" behavior so as not to risk "blurring the distinction between the two categories of misconduct" recognized under our law, simple and gross. *(Angel) Brown, supra,* 3 A.3d at 1147.

■ Here, the ALJ erred in failing to consider the statute's two levels of misconduct. Badawi's actions, when compared with cases where we have held that an employee committed gross misconduct, fall short of satisfying the statutory definition of gross misconduct. For example, in *Hayes,* we referred to drug possession as an "example of an act that may constitute gross misconduct" by looking to the enumerated examples under 7 DCMR § 312.4. 6 A.3d at 259. Badawi's behavior arguably amounted to "[c]onducting unauthorized personal activities during business hours" articulated under 7 DCMR § 312.6, which

describes behavior that constitutes simple misconduct.

■ Furthermore, the ALJ did not consider the statutory purpose of minimizing the economic burden of unemployment in determining that Badawi's conduct constituted gross misconduct. Mitigating circumstances existed in Badawi's case that warranted a finding of simple misconduct such that he remained under the protection of the statute. In contrast, in *Angel Brown,* mitigating circumstances did not exist such that a finding of simple misconduct was warranted. There, the petitioner, a uniformed SPO, taunted and fought with another uniformed SPO while on duty in a high school hallway during school hours with students present. 3 A.3d at 1144, 1147. The ALJ noted that the petitioner "could have walked away, and that doing so would have been 'consistent with Employer's interests ... and consistent with standards Employer had a right to expect.'" *Id.* at 1148 (quoting the ALJ's order). However, by causing the fight, the petitioner "deliberately or willfully threatened or violated Employer's interests ... [and] showed a disregard for standards of behavior which Employer had a right to expect of its employee." *Id.* (alteration in original) (quoting the ALJ's order) (internal quotation marks omitted). Thus, we held that the petitioner's conduct was "sufficiently egregious" to constitute gross misconduct. *Id.* at 1147–48. Given that 7 DCMR § 312.5 defines "simple misconduct" in terms of "mitigating circumstances," the ALJ in the present case should have resolved whether Badawi ever received relief from a breaker while on the job with the statutory purpose in mind. Because the ALJ failed to do so, he "blurr[ed] the distinction between the two categories of misconduct" recognized under our law. *See id.* at 1147. Therefore, on this record, we cannot say that Badawi

"engag[ed] in gross misconduct" and "took himself out of the statute's protection." *See Hayes, supra,* 6 A.3d at 261.

■ Although we would normally remand on these issues, in this case we reverse because even if the ALJ resolved these issues in Hawk One's favor upon remand, the record would still demonstrate that Hawk One fired Badawi for only simple misconduct. We note that we have previously held that an employee's behavior constituted simple misconduct, despite the ALJ's failure to consider the two statutory levels of misconduct and the record being "insufficient to sustain the ALJ's conclusion that [the employee] was fired for gross misconduct...." *See Odeniran, supra,* 985 A.2d at 430. We thought it was appropriate to do so because the record "ma[de] clear" that the employee was terminated for simple misconduct, and the ALJ's factual findings were "well supported in the record...." *See id.* at 425, 430. Here, the record is insufficient to support the ALJ's conclusion that Badawi's conduct amounted to gross misconduct. However, based on the existing record and even assuming that the ALJ would have resolved the factual dispute regarding Badawi's proffered evidence of a "sufficiently excusable" justification in a manner favorable to Hawk One, we are satisfied that the evidence would still be insufficient to support a finding of gross misconduct. This is because the substantial evidence of record makes clear that "the severity, degree, or other mitigating circumstances do not support a finding of gross misconduct." *See* 7 DCMR § 312.5. Hawk One did not demonstrate that Badawi's actions were "other than an isolated incident, nor did it contend that its business had suffered serious consequences as a result," which we have held to be sufficient to support a finding of gross misconduct. *See Odeniran, supra,* 985 A.2d at 429. Instead, the record demonstrates that Badawi had an otherwise unblemished record of employment at Hawk One, and that "nothing happened while [Badawi] was praying that would have required his immediate attention and his reacting in a prompt manner." In addition, Badawi tried to *abide* by Hawk One's firearms policy and maintain safety in Hawk One's interests under the circumstances, while meeting his religious obligation of praying for a few moments at the end of the Ramadan fast. For example, Badawi removed the bullets from the gun and placed the gun in the desk drawer at his work station to secure it. Moreover, as the ALJ found, Hawk One did not consistently enforce its firearms policy that Badawi apparently had violated only on this one relatively brief occasion. Badawi did not leave his work station, which is consistent with his claim that he did not anticipate that he would be relieved by a breaker. Accordingly, we hold that Badawi was terminated for simple misconduct and remand the case to OAH for further proceedings consistent with this opinion.[6]

*Reversed and remanded.*

**6.** We do not suggest that Badawi's conduct was not serious enough to warrant termination. However, given that this was a single incident in an otherwise unblemished employment record, it does not rise to the level of gross misconduct as described in the regulations. *See* DCMR § 312.4; *see also Odeniran, supra,* 985 A.2d at 426.