*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 24-AA-0185

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, PETITIONER,

v.

DOMINIQUE O. ROBISON, RESPONDENT.

On Petition for Review of an Order of the
District of Columbia Office of Administrative Hearings
(2024-DOES-00020)

(Submitted January 21, 2025                    Decided May 29, 2025)

*Nimalan Amirthalingam* for petitioner.

*Dominique O. Robison*, pro se.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and BECKWITH and MCLEESE, *Associate Judges*.

BECKWITH, *Associate Judge*:  After Dominique Robison, a bus operator for the Washington Metropolitan Area Transit Authority (WMATA), was suspended from her job, she filed for and was granted unemployment benefits. WMATA appealed to the Office of Administrative Hearings (OAH), arguing that Ms. Robison was ineligible for benefits because she was merely suspended, not terminated or, alternatively, because she had committed gross misconduct. The administrative law

judge (ALJ) found that Ms. Robison had committed simple misconduct, not—as WMATA alleged—gross misconduct, and was disqualified from benefits for the first eight weeks of her unemployment. WMATA appealed. Because Ms. Robison committed only simple misconduct, we affirm.

## I. Background

The following facts appear to be undisputed. As a WMATA bus operator, Ms. Robison served in a "safety-sensitive position" and was therefore subject to periodic drug testing under WMATA policy. She signed an acknowledgement of her understanding of the policy. After she brought her own bottle of urine to her scheduled drug test, she was barred from providing a sample, deemed to have automatically failed the test under WMATA's policy, and suspended without pay for 180 days. She filed for unemployment benefits, which were initially granted by the claims examiner because WMATA did not provide evidence of Ms. Robison's misconduct and therefore failed to meet its burden of proof.

After WMATA appealed to OAH, the ALJ held a hearing, at which Ms. Robison did not appear and a supervisor of WMATA bus operations was the sole witness to testify. The ALJ issued a final order concluding that WMATA met its burden of proving that Ms. Robison had engaged in simple misconduct, but not gross misconduct, and therefore was entitled to unemployment benefits for all but the first

eight weeks of her unemployment. *See* D.C. Code § 51-110(b). The ALJ reasoned that Ms. Robison's drug test failure did not constitute gross misconduct because, although she "willfully violated [WMATA's] reasonable expectations," the violation was her first drug-related offense, and WMATA's choice to suspend rather than terminate her undercut the apparent severity of the offense. The ALJ did not consider WMATA's argument that Ms. Robison was ineligible because she was merely suspended, not terminated. *See infra* n.4. WMATA appealed to this court.

## II. Discussion

"When reviewing a decision of the OAH, we look to determine whether '(1) the ALJ made findings of fact on each materially contested issue of fact, (2) substantial evidence supports each finding, and (3) the ALJ's conclusions flow rationally from its findings of fact.'" *Johnson v. So Others Might Eat, Inc.*, 53 A.3d 323, 326 (D.C. 2012) (quoting *Badawi v. Hawk One Sec., Inc.*, 21 A.3d 607, 613 (D.C. 2011) (brackets omitted)). Legal conclusions, including whether the employee is disqualified from benefits because of simple or gross misconduct, are reviewed de novo. *Badawi*, 21 A.3d at 613. The employer bears the burden of proving disqualifying misconduct by a preponderance of the evidence. *D.C. Dep't of Mental Health v. Hayes*, 6 A.3d 255, 259 (D.C. 2010).

Gross misconduct is an intentional act that "violates the employer's rules . . . [or] interests, shows a repeated disregard for the employee's obligation to the employer, or disregards standards of behavior which an employer has a right to expect of its employee." 7 D.C.M.R. § 312.3. "[T]o constitute gross misconduct, an employee's misdeeds must be serious indeed." *Odeniran v. Hanley Wood, LLC*, 985 A.2d 421, 427 (D.C. 2009); *see Brown v. Hawk One Sec., Inc.*, 3 A.3d 1142, 1147-48 (D.C. 2010) (requiring employee actions to be "sufficiently egregious to constitute 'gross misconduct'"). Examples of such acts include dishonesty, insubordination, intoxication, and the use of a controlled substance. 7 D.C.M.R. § 312.4. We have recognized that our interpretation of this term is "narrower than what might come within a literal definition of that phrase" and does not include "*every* instance" of the examples listed in the regulation. *Odeniran*, 985 A.2d at 426 & n.2; *see, e.g.*, *id.* at 425-27 (holding that claimant's deliberate avoidance of assigned tasks was not gross misconduct); *Doyle v. NAI Pers., Inc.*, 991 A.2d 1181, 1182-84 (D.C. 2010) (holding that claimant's deliberate violation of a workplace rule was not gross misconduct); *Badawi*, 21 A.3d at 614-15 (same). Employers seeking to prove gross misconduct "must make a heightened showing of seriousness or aggravation, lest the statutory distinction between gross and 'simple' misconduct, in our law since 1993, be erased." *Doyle*, 991 A.2d at 1183. If "the severity, degree, or other mitigating circumstances [of the employee's actions] do not support a

finding of gross misconduct," then the actions may be classified as only simple misconduct. 7 D.C.M.R. § 312.5.

It is undisputed that Ms. Robison violated WMATA's drug testing policy and did so intentionally. If the basis for the disqualifying misconduct—either simple or gross—is a violation of employer rules, the agency must first determine if the rule was known to the employee, was reasonable, and was consistently enforced by the employer. 7 D.C.M.R. § 312.7; *see Capitol Ent. Servs., Inc. v. McCormick*, 25 A.3d 19, 26 (D.C. 2011) (describing these conditions as necessary but not sufficient for a finding of misconduct based on a rule violation). Here, Ms. Robison signed an acknowledgment of the policy long before the incident, the ALJ found that WMATA's drug testing policy was reasonable to apply to bus operators, and uncontradicted testimony by the WMATA employee established that bus operators are consistently suspended for failing a drug test.

We conclude, however, that the policy violation was not "sufficiently egregious" to warrant a finding of gross misconduct. *Brown*, 3 A.3d at 1147. Notably, Ms. Robison was not suspended for violating the policy against drug use or possession but rather the policy regarding drug *testing*.[1] Specifically, Ms.

---

[1] Indeed, the exact requirements of WMATA's drug policy—for example,

Robison's possession of a bottle of urine resulted in an automatic failure of the drug test because WMATA treated it as a "refusal to test" for not "remain[ing] until the testing process is complete"—she did not fail because the test results actually indicated drug use.

WMATA's reliance on *Hayes*, 6 A.3d at 259-61, therefore, is misplaced, and we find *Johnson*, 53 A.3d at 326-28, to be more instructive. In *Hayes*, an employee at a psychiatric hospital engaged in gross misconduct when, after having a history of poor work attendance due to substance abuse problems, he was convicted of drug possession, resulting in a two-month absence from work and making him an "unsuitable" role model for his patients. 6 A.3d at 259. In *Johnson*, by contrast, we held that it was not gross misconduct when a security guard—whose workplace prohibited drug use or possession on the premises—tested positive for marijuana. 53 A.3d at 326. We reasoned that, unlike in *Hayes*, where the claimant's drug conviction "had palpable effects on his employment," this claimant's positive drug test had no nexus with his employment—he did not use drugs or have drug paraphernalia at work, his work performance did not suffer, and the employer "did

whether both on- and off-duty drug use or possession is prohibited—are unknown because only excerpts of the drug testing policy are in the record before us. The excerpted testing policy would indicate that, other than a refusal to test, only "[c]onfirmed presence *while on duty* of any controlled substance unless prescribed or over the counter" is a violation.

not allege any discernible effect on its business" because of the off-duty drug use. *Id.* at 327, 328.

Here, although Ms. Robison's conduct is inferentially connected with drug use,[2] that inference is less conclusive than either a drug conviction, as in *Hayes*, or an actual positive drug test, as in *Johnson*. Nothing in the record—including the documentary evidence and the WMATA supervisor's testimony—indicates that Ms. Robison had a history of drug use, had possessed drugs or drug paraphernalia at work before, or had acted impaired at any point in her tenure with WMATA. Moreover, the purpose of the drug testing policy is to "prevent accidents, injuries, and fatalities caused by misuse of alcohol and prohibited drugs," but beyond this general concern, WMATA provided no link between Ms. Robison's conduct and public safety. Although Ms. Robison, like the hospital worker in *Hayes*, occupies a "position of trust and responsibility," 6 A.3d at 260, WMATA failed to establish that Ms. Robison negatively affected WMATA's operations or "compromised the safety of others," *Johnson*, 53 A.3d at 327-28, unlike the employer in *Hayes* who alleged

---

[2] While perhaps the most likely explanation for Ms. Robison's conduct is that she had engaged in drug use, there could be other innocent explanations. *See, e.g.*, *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 349 & n.1 (Tex. 1995) (explaining that "poppy seeds in sufficient quantities" may trigger false positive drug tests); *Schulkers v. Kammer*, 955 F.3d 520, 529 (6th Cir. 2020) (describing the false positive drug test result due to the woman's ingestion of poppyseed chips).

that the claimant's actions caused him to be a poor role model for the hospital's patients recovering from substance abuse. Perhaps in recognition of that, coupled with the fact that this was Ms. Robison's first violation of the policy, WMATA merely suspended Ms. Robison despite having the capability, based on the terms of the signed policy acknowledgment, to subject her to "immediate discharge."[3]

WMATA also argued that Ms. Robison committed gross misconduct by being dishonest and insubordinate. As explained, not "*every* instance of what literally might be termed insubordination [or] dishonesty" will constitute gross misconduct. *Odeniran*, 985 A.2d at 426 n.2. Here, Ms. Robison expressed contrition in her first meeting with her supervisor, telling him that it was a "mistake" to have brought the bottle of urine to the drug test. WMATA does not describe other acts or a pattern of this behavior, so this was an apparently "isolated incident" "on a single day" that

---

[3] At the hearing, the WMATA employee testified that the choice of suspension was "consistent with" a collective bargaining agreement negotiated by the bus operators' union, and WMATA counsel represented that her suspension was "per the collective bargaining agreement." The ALJ made no factual findings on that point, instead concluding that WMATA's choice of "suspension instead of discharge negates the severity or degree of the conduct." As an appellate court, we cannot make factual findings, *see Hahn v. Univ. of D.C.*, 789 A.2d 1252, 1256 (D.C. 2002), but even if we assume that the collective bargaining agreement compelled the suspension, that term could have been imposed only through WMATA's negotiation over and agreement to it, *see McNeil v. Peoples Life Ins. Co.*, 43 A.2d 293, 294 (D.C. 1945) ("A collective bargaining agreement represents an accord between the employer and the bargaining representative as to terms which will govern hiring and work and pay . . . ." (internal quotation marks omitted)).

caused, based on WMATA's allegations, little, if any, actual harm. *Id.* at 429; *see*

*Doyle*, 991 A.2d at 1184 ("[I]t was an 'isolated incident' and [the employer] did not

try to show that its staffing ability 'had suffered serious'—or indeed any—

'consequences as a result' of petitioner's unavailability." (quoting *Odeniran*, 985

A.2d at 429)).  Thus, given that this was Ms. Robison's first offense, there was no

direct evidence of actual drug use or impairment, and there was no demonstrable

impact on passenger safety or WMATA's business operations, we agree with the

ALJ that Ms. Robison's actions did not rise to the level of gross misconduct.

Alternatively, WMATA argues that Ms. Robison is not qualified for

unemployment benefits because she was suspended, not terminated, from her

position.  We do not agree.[4]  The Act provides benefits to any "unemployed

individual" who meets certain qualifications, D.C. Code § 51-109(5), and "[a]n

---

[4] The ALJ declined to consider this argument because he deemed himself "constrained to consider only those issues decided in the [initial] [d]etermination" by the claims examiner, citing D.C. Code § 51-111(b).  Yet that statutory provision expressly contemplates an "appeal tribunal"—which refers to the ALJ in this situation, *see* D.C. Code § 51-111(d)—denying benefits "for reasons other than matters included in the initial determination." D.C. Code § 51-111(b) (requiring that a claimant is notified and provided appeal rights "[i]f, subsequent to such initial determination, benefits . . . are denied for reasons other than matters included in the initial determination").  If an ALJ could deny benefits for reasons other than those in the initial determination, it seems likely that one is empowered to *consider* those reasons when a party presents them as an argument for denying benefits, as WMATA did here.

individual shall be deemed 'unemployed' with respect to any week during which he performs no service and with respect to which no earnings are payable to him," D.C. Code § 51-101(5). The undisputed factual record establishes that Ms. Robison was suspended without pay for 180 days, and there is no allegation from WMATA that she performed any work during that period. *See Final Order*, No. 2024DOES01329, D.C. Off. of Admin. Hearings, at 3, 6-7 (Nov. 26, 2024) (determining that a claimant who was "suspended pending HR investigation" was "unemployed" and eligible for benefits because "he did not work or receive earnings" during the suspension period). In support of its argument, WMATA points to an offhand statement in *District of Columbia v. D.C. Off. of Emp. Appeals*, 883 A.2d 124, 125 (D.C. 2005) ("Because [the employee] was suspended, and not discharged, for misconduct, he was not eligible for such benefits."), but the quoted language is not binding—it did not figure into the statutory interpretation question that was the central issue of the case, it appeared in the facts section of the opinion without legal support, and it seemed to describe the agency's view of the claimant's eligibility, not the court's original legal analysis. Thus, because Ms. Robison was suspended without pay and did not work, she was "unemployed" within the meaning of the statute.

For these reasons, we affirm the decision of the ALJ.

*So ordered.*